**DAY PITNEY LLP**
Paul J. Halasz (Attorney No. 022551991)
One Jefferson Road
Parsippany, New Jersey 07054-2891
(973) 966-6300

Of Counsel:
**HOGAN LOVELLS US LLP**
875 Third Avenue
New York, NY 10022

Attorneys for Plaintiff Harris Faulkner

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARRIS FAULKNER, a citizen of the State of New Jersey, | HONORABLE Civil Action No. 15- |
| Plaintiff, | |
| v. | **COMPLAINT** |
| HASBRO, INC., a corporation of the State of Rhode Island, | |
| Defendant. | |

Plaintiff Harris Faulkner ("Faulkner"), by and through her undersigned counsel, for her

Complaint herein, alleges as follows:

92058653.1

## BACKGROUND

1.      Harris Faulkner, the uniquely named, acclaimed veteran journalist and author, has worked for decades to establish and maintain her personal brand and laudable professional reputation.  Without Faulkner's prior knowledge or consent, Defendant Hasbro, Inc. ("Hasbro"), a multi-billion dollar toy company, willfully and wrongfully appropriated Faulkner's unique and valuable name and distinctive persona for its own financial gain—by creating, manufacturing, and distributing for sale a plastic toy hamster named "Harris Faulkner" as part of Hasbro's "Littlest Pet Shop" product line (the "Harris Faulkner Hamster Doll").  The packaging for the Harris Faulkner Hamster Doll includes a "TM" symbol after Faulkner's name which, according to the packaging's language, falsely signifies that Hasbro claims a United States trademark interest in Faulkner's name, when it in fact owns no such interest, registered or otherwise.  The packaging also contains a warning that the Harris Faulkner Hamster Doll is a "CHOKING HAZARD."  By its unlawful actions, Hasbro has implied—falsely—Faulkner's association with, approval, and endorsement of Hasbro and/or the Harris Faulkner Hamster Doll and has violated Faulkner's right to control the use of her name and likeness.  Through these actions, Hasbro has caused substantial commercial and emotional damage to Faulkner.  Accordingly, Faulkner brings this action against Hasbro to recover damages for direct and contributory acts of unfair competition in contravention of § 43 of the Lanham Act and for violation of her right of publicity pursuant to New Jersey's common law.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Faulkner resides in and is a citizen of the State of New Jersey.  Faulkner is a professional journalist, author, and public speaker.  She is also a wife and mother of two young girls, ages six and eight, and is known to reference her experiences as a working mother in her professional endeavors.

92058653.1

3.     Upon information and belief, Defendant Hasbro is a publicly traded corporation organized under the laws of Rhode Island that sells, manufactures, and/or produces toys, games, and entertainment products such as television programs and electronic Apps.  Hasbro's principal place of business is in Pawtucket, Rhode Island.

4.     The Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, as well as 15 U.S.C. § 1121, because this civil action is between citizens of different states and arises in part under the Lanham Act.  The jurisdictional minimum of 28 U.S.C. § 1332(a) is met because Plaintiff seeks in excess of $75,000 in damages.

5.     This Court has personal jurisdiction over Hasbro based upon its contacts with New Jersey, which include being registered in New Jersey to do business as a foreign for-profit corporation and, upon information and belief, purposefully directing its activities to New Jersey through, *inter alia*: taking online orders from consumers in New Jersey through hasbrotoyshop.com, which is a forum for a business that is operated in part for use by New Jersey customers; causing the Harris Faulkner Hamster Doll to be sold in New Jersey; and posting advertisements and marketing products bearing Faulkner's name, likeness, identity, and/or persona on interactive commercial websites, in violation of her rights.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and § 1391(b) because events giving rise to the claims occurred in this District, insofar as Defendant used Faulkner's name, likeness, identity, or persona in New Jersey through, *inter alia*, marketing and selling the Harris Faulkner Hamster Doll to New Jersey residents, directly and/or through other merchants, on retail websites and in stores located in this District, and because the Defendant is subject to personal jurisdiction here.

- 3 -

## FACTS

7.      Faulkner is a nationally known, six-time Emmy award-winning journalist with more than two decades of experience.  For the last ten years, Faulkner has been employed as a news anchor and commentator on the Fox News Channel ("FNC"), the nation's number-one rated national cable television news network.  Faulkner first joined FNC in 2005 as a correspondent.  Since then, she has risen through the ranks to become what one leading industry publication recently described as a "ubiquitous" presence on the network.[1]  Today, Faulkner appears on the air six days a week—as the anchor for FNC's weekly, hour-long newscast of record, *Fox Report Weekend*; as a host and panelist on FNC's enormously popular news and editorial program, *Outnumbered*; and as a frequent contributor on the live, current events news program, *Happening Now.*  In addition to these regularly scheduled responsibilities, Faulkner also serves as a breaking news anchor for the network.

8.      In her time at FNC, Faulkner has covered many major news stories.  She has anchored key moments of FNC's political coverage, including the 2013 government shutdown, the 2013 State of the Union Address, the 2012 vice presidential debate, and the 2012 election night.  She has also reported on significant international news events, including the fall of Tripoli in 2011 and the death of North Korea's Kim Jong-Il, as well as some of the most significant domestic news in recent memory, from the death of Whitney Houston, to the trial of George Zimmerman for killing Trayvon Martin, and the Emanuel A.M.E. Church shooting in Charleston, South Carolina.

9.      Prior to joining FNC, Faulkner worked at a variety of local and national news organizations.  Her substantial experience in news, television, and radio includes serving as a

---

[1]Brian Steinberg, "At Fox News Channel, Harris Faulkner Has a Growing Presence," *Variety*, March 19, 2015, http://variety.com/2015/tv/news/at-fox-news-channel-harris-faulkner-has-a-growing-presence-1201456126/.

92058653.1

correspondent for the nationally syndicated television program, *A Current Affair*; as a substitute anchor on *The Nancy Grace Show*; as the host of *The Harris Faulkner Show* on FM107 Radio in Minneapolis, Minnesota; as the primary evening anchor for KSTP-TV in Minneapolis-Saint Paul; as the primary evening anchor for WDAF-TV in Kansas City, Missouri; and as an anchor and reporter in Greenville, North Carolina for WNCT-TV.

10.     In addition to her work as a journalist and anchor, Faulkner has also established herself as an accomplished author and public speaker, frequently commanding substantial sums for her professional speaking engagements.  Faulkner is also well known as an advocate of anti-stalking legislation; indeed, in recognition of her efforts to instill courage in other women not to accept victimization by stalkers, she received the Amelia Earhart Pioneering Achievement Award.

11.     As a result of Faulkner's long and varied career in journalism, her professional integrity, and her hard work, Faulkner has been lauded with six Emmy Awards, including 2004 Emmys for Best Newscaster and Best News Special ("Eyewitness to War").  On April 21, 2015, Faulkner was recognized as an innovator in the entertainment industry in *Variety*'s 2015 New York Women's Impact Report.[2]  More recently, Faulkner was described as a "rising star" in a May 2015 Associated Press article that profiled her career and was published nationwide in the *New York Times*[3] and the *Boston Herald*.[4]

---

[2] Variety Staff, "New York Women's Impact Report," *Variety*, April 21, 2015, http://variety.com/gallery/new-york-womens-impact-report/#!16/harris-faulkner-anchor-fox-reportco-host-outnumbered-fox-news/.
[3] The Associated Press, "Harris Faulkner Considered Rising Star at Fox," *The New York Times*, May 6, 2015, http://www.nytimes.com/aponline/2015/05/06/arts/ap-us-tv-fox-faulkner.html?_r=0.
[4] The Associated Press, "Harris Faulkner Considered Rising Star at Fox," *Boston Herald*, May 6, 2015, http://www.bostonherald.com/business/media_marketing/2015/05/harris_faulkner_considered_rising_star_at_fox.

92058653.1

12.     Defendant Hasbro is reported to be the world's third-largest toy manufacturer, with estimated sales topping $4 billion annually.  Among the most popular and lucrative toy lines manufactured by the company is the "Littlest Pet Shop" brand, which is largely comprised of plastic miniature animals with exaggerated features (e.g., disproportionately large heads and eyes).  These plastic miniature animals are marketed under individualized names (e.g., "Pepper Clark" the skunk and "Sunil Nevla" the mongoose).  In addition to manufacturing and selling the "Littlest Pet Shop" toys themselves, Hasbro markets and capitalizes on the brand through a "Littlest Pet Shop" cartoon program, two electronic Apps/games (which are free to download, but charge users fees to access certain game features), online videos, comic books, and stuffed animals.  Littlest Pet Shop toys have also been included in McDonald's Happy Meals more than once.  The result, according to Hasbro's most recent financial report, is an internationally successful brand of toys estimated to generate hundreds of millions in revenue each quarter.[5]

13.     In 2014, Hasbro introduced the Harris Faulkner Hamster Doll to the "Littlest Pet Shop" line.  A photo of the Harris Faulkner Hamster Doll in its packaging is reproduced below:

---

[5] Hasbro Reports Revenue and Operating Profit Growth for the First Quarter 2015, http://investor.hasbro.com/releasedetail.cfm?releaseid=907255 (last visited August 27, 2015).

92058653.1



14.     Upon information and belief, Defendant has sold the Harris Faulkner Hamster Doll across the country and internationally, including in New Jersey, both in stores and online, including but not limited to, through hasbrotoyshop.com, Target, target.com, walmart.com, Wal-Mart, Amazon.com, toysrus.com, Toys 'R Us, and toywiz.com.

15.     Hasbro's manufacture, sale, and distribution of the Harris Faulkner Hamster Doll is extremely concerning and distressing to Faulkner.  In addition to its prominent and unauthorized use of Faulkner's name, elements of the Harris Faulkner Hamster Doll also bear a physical resemblance to Faulkner's traditional professional appearance, in particular tone of its complexion, the shape of its eyes, and the design of its eye makeup.  Hasbro's capitalization on Faulkner's name, likeness, identity, and persona is underscored with the display of the "TM" symbol after her name and a statement on the back of the packaging that this symbol "denote[s] U.S. Trademark[]" that—falsely—claims that Hasbro owns a United States trademark in "Harris Faulkner."

16.     The above is actionable because *Hasbro never sought—and Faulkner never gave—permission for her name, likeness, identity, or persona to be used in connection with the*

*Harris Faulkner Hamster Doll*.  Nor did she assign, license, or otherwise consent to Hasbro using her name as a trademark.  Further, Faulkner does not endorse products of any kind, as doing so would be a breach of journalistic ethics, would directly harm her professional credibility, and would be in violation of her contractual obligations to her employer.  This means that Hasbro misappropriated Faulkner's name, likeness, identity, or persona without consent, for its own profit, for the purpose of capitalizing off of her good name and persona, all at Faulkner's expense.

17.     In addition to using Faulkner's name to market and sell the Harris Faulkner Hamster Doll, on the product packaging directly above the sticker displaying the "Harris Faulkner" name is a message stating, "See LittlestPetShop.com for app release date."  This instruction directs anyone who views Faulkner's name on the Harris Faulkner Hamster Doll packaging to Hasbro's "Littlest Pet Shop" website.  On that website, users can watch "Littlest Pet Shop" videos, view content from the "Littlest Pet Shop" cartoon program, download "Littlest Pet Shop" games and apps, and shop for "Littlest Pet Shop" toys.  Thus, Hasbro is using Faulkner's name not just to sell the Harris Faulkner Hamster Doll, but to market its website and the entire line of "Littlest Pet Shop" toys and entertainment products, including the cartoon program and electronic apps.

18.     Hasbro's use of Faulkner's name, likeness, identity, or persona on the Harris Faulkner Hamster Doll is particularly wrongful for several reasons.  First, according to the Harris Faulkner Hamster Doll's own packaging, the Harris Faulkner Hamster Doll is a "CHOKING HAZARD" that is not suitable for young children.  Faulkner is extremely distressed that her name has been wrongly associated with a plastic toy that is a known choking hazard that risks harming small children.  Further, Hasbro's portrayal of Faulkner as a rodent is demeaning and insulting.  Finally, since Faulkner does not, and as a journalist cannot, endorse commercial

- 8 -

products, Hasbro's use of her name in association with the Harris Faulkner Hamster Doll creates the false impression that Faulkner would impugn her own professional ethics by agreeing to have a commercial product named after her.

19.    Hasbro's use of Faulkner's name, likeness, identity, or persona is also particularly blatant and wrongful because the evidence shows that it was willful.  Faulkner put Hasbro on notice that its use of her name, likeness, identity, or persona was illegal and unauthorized as early as January 13, 2015, but as of February 6, 2015—over three weeks later—the Harris Faulkner Hamster Doll was still available for sale *on Hasbro's own website*.  As of the date of this Complaint, more than five months after Hasbro was put on notice of its wrongful activity, Faulkner's name is still being used on a website owned by Defendant to sell "Littlest Pet Shop" toys—indeed, at least through July 2015, on this page, consumers were directed to other websites where the Harris Faulkner Hamster Doll could be purchased.  Today, the product is still available for sale on Amazon.com, toyztime.com, and elsewhere.

## AS AND FOR A FIRST CAUSE OF ACTION
(Direct Liability for False Endorsement/Unfair Competition
Under the Lanham Act, 15 U.S.C. § 1125(a))

20.    Plaintiff repeats and realleges the allegations of paragraph 1 through 19 of this Complaint as if fully set forth herein.

21.    Defendant used Faulkner's name, likeness, identity, or persona in interstate commerce to identify a commercial product, the Harris Faulkner Hamster Doll, and/or other goods and services associated with the "Littlest Pet Shop" toy line.

22.    Defendant used Faulkner's name, likeness, identity, or persona in a manner that is likely to cause confusion, mistake, or deception with respect to Hasbro, the "Littlest Pet Shop" toy line, and/or their affiliation, sponsorship, approval, endorsement, or association with Faulkner.

92058653.1

23.     Such use constitutes a false endorsement and a false association that is likely to confuse consumers as to whether Faulkner has sponsored or approved the Harris Faulkner Hamster Doll, the "Littlest Pet Shop" toy line, and/or Hasbro.

24.     Plaintiff has already seen evidence of actual consumer confusion regarding whether Faulkner has sponsored or approved the Harris Faulkner Hamster Doll, the "Littlest Pet Shop" toy line, and/or Hasbro.

25.     Defendant's actions violated 15 U.S.C. § 1125(a).

26.     Defendant's wrongful conduct as described above was willful.

27.     Defendant's use of Faulkner's name, likeness, identity, or persona has damaged Faulkner in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Contributory Liability for False Endorsement/Unfair Competition
Under the Lanham Act, 15 U.S.C. § 1125(a))

28.     Faulkner repeats and realleges the allegations of paragraph 1 through 27 of this Complaint as if fully set forth herein.

29.     Upon information and belief, Defendant supplied domestic and international companies ("Re-Sellers") with the Harris Faulkner Hamster Doll for the purpose of the Re-Sellers' marketing and re-selling the Harris Faulkner Hamster Doll to consumers.

30.     Defendant knew and/or had reason to know at the time that it sold the Harris Faulkner Hamster Doll to Re-Sellers that it was not authorized to use Faulkner's name, likeness, identity, or persona in association with and endorsement of Hasbro, the "Littlest Pet Shop" toy line, and/or the Harris Faulkner Hamster Doll.

31.     Upon information and belief, the Re-Sellers advertised for sale, displayed, and/or sold for a profit the Harris Faulkner Hamster Doll bearing Faulkner's name, likeness, identity, or persona in stores and/or through commercial websites.

92058653.1

32.     Upon information and belief, the Re-Sellers used Faulkner's name, likeness, identity, or persona in interstate commerce to identify a commercial product, the Harris Faulkner Hamster Doll, and/or other goods and services associated with the "Littlest Pet Shop" toy line.

33.     Upon information and belief, the Re-Sellers used Faulkner's name, likeness, identity, or persona in a manner that is likely to cause confusion, mistake, or deception with respect to Hasbro, the "Littlest Pet Shop" toy line, and/or the Harris Faulkner Hamster Doll's affiliation, sponsorship, approval, endorsement, or association with Faulkner.

34.     Such use constitutes a false endorsement and a false association that is likely to confuse consumers as to whether Faulkner has sponsored or approved the Harris Faulkner Hamster Doll, the "Littlest Pet Shop" toy line, and/or Hasbro.

35.     Plaintiff has already seen evidence of actual consumer confusion regarding whether Faulkner has sponsored or approved the Harris Faulkner Hamster Doll, the "Littlest Pet Shop" toy line, and/or Hasbro.

36.     The Re-Sellers' actions violated 15 U.S.C. § 1125(a).

37.     The Re-Sellers' use of Faulkner's name, likeness, identity, or persona has damaged Faulkner in an amount to be determined at trial.

38.     Upon information and belief, Defendant acted with an intent to induce the Re-Sellers to infringe Plaintiff's rights under 15 U.S.C. § 1125(a) by selling the Harris Faulkner Hamster Doll to the Re-Sellers, and/or continued to supply the Harris Faulkner Hamster Doll to the Re-Sellers when it knew or had reason to know that their resale of the Harris Faulkner Hamster Doll would infringe Plaintiff's rights under 15 U.S.C. § 1125(a).

39.     Defendant's actions contributed to Re-Sellers' violation of 15 U.S.C. § 1125(a) and caused Plaintiff damages.

92058653.1

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Faulkner's Right of Publicity)

40.     Faulkner repeats and realleges the allegations of paragraph 1 through 39 of this Complaint as if fully set forth herein.

41.     Defendant misappropriated Faulkner's name, likeness, identity, or persona for the Harris Faulkner Hamster Doll and/or other goods and services associated with the "Littlest Pet Shop" toy line.

42.     Defendant is using Faulkner's name, likeness, identity, or persona for commercial purposes without her consent.

43.     Defendant misappropriated Faulkner's name, likeness, identity, or persona for the Harris Faulkner Hamster Doll and/or other goods and services associated with the "Littlest Pet Shop" toy line for its own use or benefit, including but not limited to, attracting consumers to purchase the Harris Faulkner Hamster Doll and other "Littlest Pet Shop" toys and products, with the false belief that Faulkner was associated with and/or endorsed Hasbro, the "Littlest Pet Shop" toy line, and/or the Harris Faulkner Hamster Doll.

44.     Defendant appropriated Faulkner's name, likeness, identity, or persona in association with the Harris Faulkner Hamster Doll, the "Littlest Pet Shop" toy line, and/or Hasbro for the purpose of appropriating the commercial and other values associated with Faulkner's name and likeness.

45.     Defendant's actions violated Faulkner's right of publicity under New Jersey common law.

46.     Defendant's use of Faulkner's name, likeness, identity, or persona damaged Faulkner in an amount to be determined at trial through, *inter alia*, causing her emotional distress and suffering due to the false impression that she is associated with Hasbro, the "Littlest Pet Shop" toy line, and/or the demeaning and insulting Harris Faulkner Hamster Doll, including but

- 12 -

not limited to the fact that Faulkner is very concerned about the likelihood that a product bearing her name could physically injure a small child because it is a known choking hazard.

47. Hasbro's wrongful actions also have diminished the value of Faulkner's name, likeness, identity, and persona. Hasbro's false suggestion that Faulkner endorsed its product directly impugns Faulkner's journalistic integrity, by suggesting that she has entered into a business relationship with the company (when she has not) and that she has lent her good name to a demeaning plastic rodent (when she did not). These false associations unfairly damage her credibility and her perceived independence—which are both essential to the public's trust in her as a journalist. In short, Hasbro's unlawful and unauthorized actions have misappropriated the commercial value of Faulkner's name and persona, impaired her ability to do her job, and harmed her professional marketability and the value of her brand.

**WHEREFORE**, Plaintiff respectfully prays that this Court grant Judgment to the Plaintiff as to the above causes of action, as follows:

1. Adjudging and decreeing that Defendant has impermissibly and falsely implied Faulkner's association and endorsement of Hasbro, the "Littlest Pet Shop" toy line, and/or the Harris Faulkner Hamster Doll; has contributed to the infringing activities of its Re-Sellers, in further violation of the Lanham Act; and has violated Faulkner's right of publicity;

2. Permanently enjoining and restraining Defendant from further violations and misappropriations of Faulkner's name, likeness, identity, or persona;

3. Awarding Plaintiff damages, including without limitation, actual damages and profits earned from the use of Faulkner's name, likeness, identity, or persona, in the amount of $5,000,000;

4. Requiring Defendant to account to Plaintiff for any and all profits derived by it through the violation of her rights;

- 13 -

92058653.1

5.      Requiring Defendant to disgorge any fees, profits, or money to Plaintiff by which it has been unjustly enriched; and

6.      Granting Plaintiff her costs and disbursements of this action, including reasonable attorneys' fees;

7.      Awarding Plaintiff pre-judgment and post-judgment interest on each and every damage award; and

8.      Granting such other, further, or different relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues triable.

Dated: Parsippany, New Jersey
      August 31, 2015

DAY PITNEY LLP

 /s/ Paul Halasz    
Paul Halasz
   phalasz@daypitney.com
Dennis LaFiura
   dlafiura@daypitney.com
One Jefferson Road
Parsippany, NJ 07054-2891
ph: (973) 966 6300
fx: (973) 966 1015

Of Counsel:
Dori Ann Hanswirth, Esq.
Theresa M. House, Esq.
Patsy C. Wilson, Esq.
HOGAN LOVELLS US LLP

875 Third Ave
New York, New York 10022
ph: (212) 918-3000
fx: (212) 918-3100

*Attorneys for Plaintiff Harris Faulkner*

*pro hac vice* applications to be filed

- 14 -

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

      /s/ Paul J. Halasz
Paul J. Halasz
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054-2891
(973) 966-6300
phalasz@daypitney.com

Attorneys for Plaintiff

92058653.1