UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| HARRIS FAULKNER, | : |
| | : |
| Plaintiff, : | Civil Action No. 15-6518 |
| | : (KSH)(CLW) |
| - against - | : |
| | : Return Date:  December 21, 2015 |
| HASBRO, INC., | : |
| | : ORAL ARGUMENT REQUESTED |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S PARTIAL MOTION TO DISMISS

FRANKFURT KURNIT KLEIN & SELZ, PC
Maura J. Wogan (*admitted pro hac vice*)
Jeremy S. Goldman (*admitted pro hac vice*)
Anna Kadyshevich (*admitted pro hac vice*)
Beth I. Goldman
488 Madison Avenue, 10th Floor
New York, New York 10022
mwogan@fkks.com
jgoldman@fkks.com
akadyshevich@fkks.com
bgoldman@fkks.com
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendant Hasbro, Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND......................................................................................1

    Hasbro and Littlest Pet Shop...............................................................................1

    The Fictional Hamster Toy Named Harris Faulkner ..........................................2

    The Real-Life Adult Woman Named Harris Faulkner ........................................3

    Ms. Faulkner's Complaint Against Hasbro ........................................................4

STANDARD ON A MOTION TO DISMISS.............................................................5

ARGUMENT ..............................................................................................................6

MS. FAULKNER FAILS TO STATE A CLAIM FOR A VIOLATION OF HER RIGHT
OF PUBLICITY BECAUSE  HASBRO DID NOT MISAPPROPRIATE HER
IDENTITY...................................................................................................................6

    A.    A Right of Publicity Claim Requires Misappropriation of Identity ......................6

    B.    Mere Use of Another Person's Name is Not Enough to Establish a Claim
        for Right of Publicity ........................................................................................7

    C.    Ms. Faulkner's Claim that the Hamster Toy Bears Her Likeness is
        Implausible as a Matter of Law ........................................................................11

    D.    The Opposite Contexts in Which the Hamster Toy and Ms. Faulkner Exist
        Conclusively Demonstrate that Hasbro Did Not Misappropriate Plaintiff's
        Identity ..............................................................................................................13

CONCLUSION...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Gordon*,
  86 A.D.2d 514, 446 N.Y.S.2d 48 (1st Dep't 1982),
  *aff'd,* 56 N.Y.2d 780 (1982) ........................................................................... 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................5, 11

*Bates v. Cast*,
  316 P.3d 246 (Okla. Civ. App. 2014) ............................................................ 13, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................5, 11

*Botts v. New York Times Co.*,
  106 F. App'x 109 (3d Cir. 2004) ......................................................................9, 12

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ............................................................................2, 5

*Harding v. Paramount Pictures*,
  No. 12 Civ. 66 (DAB)(HBP), 2013 WL 174401 (S.D.N.Y. Jan. 16, 2013) ............................1

*Hart v. Elec. Arts, Inc.*,
  717 F.3d 141 (3d Cir. 2013), *cert. dismissed*, 135 S. Ct. 43, 189 L. Ed. 2d 894
  (2014) ...................................................................................................... 6, 7, 8

*Hooker v. Columbia Pictures Indus., Inc.*,
  551 F. Supp. 1060 (N.D. Ill. 1982) ................................................................ 10, 13

*Kinsella v. Welch*,
  362 N.J. Super. 143, 827 A.2d 325 (App. Div. 2003) ............................................7

*Nebb v. Bell Syndicate*,
  41 F. Supp. 929 (S.D.N.Y. 1941) ....................................................................10

*People on Complaint of Maggio v. Charles Scribner's Sons*,
  205 Misc. 818, 130 N.Y.S.2d 514 (N.Y. Magis. Ct. 1954) ........................... 8, 10, 13

*Prima v. Darden Rests., Inc.*,
  78 F. Supp. 2d 337 (D.N.J. 2000) ....................................................................7

*Swacker v. Wright*,
   154 Misc. 822, 277 N.Y.S. 296 (Sup. Ct. 1935)..............................................................9, 14

*Tanikumi v. Walt Disney Co.*,
   No. 15-1959, 2015 WL 5693125 (3d Cir. Sept. 29, 2015)......................................................1

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ...................................................................................................5

**Statutes**

Federal Rule of Civil Procedure 12(b)(6)......................................................................................5

Lanham Act, 15 U.S.C. § 1125(a) ................................................................................................4

**Other Authority**

Restatement (Second) of Torts § 652C ..............................................................................*passim*

J. Thomas McCarthy, The Rights of Publicity and Privacy (2d ed. 2012) ........................*passim*

iii

Defendant Hasbro, Inc. ("Hasbro") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Third Cause of Action of the Complaint filed by plaintiff Harris Faulkner ("Plaintiff" or "Ms. Faulkner").

## PRELIMINARY STATEMENT

Harris Faulkner, an adult woman who works as a newscaster on the Fox News Channel ("FNC"), claims that her right of publicity has been violated by Hasbro's creation and sale of a one-inch plastic hamster toy named Harris Faulkner—a fictional character in an imaginary play world for children called "Littlest Pet Shop." However, other than the fact that the toy has the name "Harris Faulkner," the fictional hamster and Ms. Faulkner share nothing in common. Not only do the miniature plastic hamster toy and the human Ms. Faulkner bear no physical resemblance (despite Plaintiff's attempt to argue otherwise), but the two exist in such polar opposite contexts that there is no basis to find that Hasbro misappropriated Ms. Faulkner's unique identity. Because name-sameness is not enough to state a claim for a violation of one's right of publicity under well-established law, and because Ms. Faulkner's attempt to claim that the hamster toy misappropriates her likeness is implausible on its face, Ms. Faulkner's Third Cause of Action alleging a violation of her right of publicity fails to state a claim for which relief can be granted and should be dismissed with prejudice.

## FACTUAL BACKGROUND

### Hasbro and Littlest Pet Shop

Hasbro is one of the world's leading game, toy and entertainment companies with many beloved brands including Littlest Pet Shop. The Littlest Pet Shop brand includes a fictional world comprising hundreds of miniature, cartoon-like animals made for children ages four and up. The Littlest Pet Shop characters are recognizable by their "exaggerated features," including their "disproportionately large heads and eyes." Compl. ¶¶ 12, 13. In addition to toys, the story

of Littlest Pet Shop is told through an animated television program, two mobile applications, and in various comics and online videos.  Compl. ¶ 12.

**The Fictional Hamster Toy Named Harris Faulkner**

In 2014, Hasbro introduced into its Littlest Pet Shop series a small hamster—Pet #3665—named "Harris Faulkner" (the "Hamster Toy").  Compl. ¶ 13.[1]  The Hamster Toy is a plastic toy that measures approximately 0.8" by 0.3" by 0.2."  *See* Wogan Decl. Exs. A-B.  It is a four-legged animal with a tail.  Its "fur" is golden yellow, the "hair" on its head is medium brown, its muzzle is white, its nose is pink, its eyes are blue, and it has long eyelashes painted on its face.  Wogan Decl. Ex. A.  An image of the Hamster Toy is below:



The Hamster Toy is packaged with a slightly larger Littlest Pet Shop toy named Benson Detwyler, a terrier with dark brown fur and pink eyes.  Compl. ¶ 13; Wogan Decl. Exs. A-B.  As

---

[1] The Hamster Toy, as it was packaged and sold, is depicted in paragraph 13 of Plaintiff's Complaint.  Enclosed as Exhibit A to the declaration of Maura J. Wogan, dated October 26, 2015 ("Wogan Decl."), is the actual Hamster Toy in its packaging.  On this motion, the Court may consider the Hamster Toy and its packaging because they are "integral to the claim" and "incorporated by reference" into the Complaint.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  For ease of reference on this Motion, attached as Exhibit B to the Wogan Declaration are images of the Hamster Toy and its packaging, including an insert that is included in the packaging that depicts the 2014 Littlest Pet Shop series, as well as the fictionalized world in which the pets live.

shown in the image below, both the Harris Faulkner and Benson Detwyler toys have the

exaggerated eyes, long eyelashes, and disproportionately large head that are common to all of the

Littlest Pet Shop pets:



Like the Benson Detwyler and Harris Faulkner toys, the other pets released in 2014 as

part of the Littlest Pet Shop's "Pet Pawsibilities" series have proper names such as Farah May,

Dawn Ferris, Zoe Trent, Zizi Morales, Lily Laroux, Delilah Barnsley, and Sunil Nevla.  *See*

Compl. ¶¶ 12, 13; Wogan Decl. Ex. B.

**The Real-Life Adult Woman Named Harris Faulkner**

Ms. Faulkner, a New Jersey resident, is an author, public speaker, and journalist for the

FNC.  Compl. ¶¶ 1, 7.  She is a human, adult, African-American woman with dark brown eyes

and dark brown hair:

3



*See also* Wogan Decl. Ex. C (collecting images of Ms. Faulkner).  Since 2014, Ms. Faulkner has

anchored several weekly programs on the network.  Compl. ¶ 7 & n.1 (citing Brian Steinberg,

"At Fox News Channel, Harris Faulkner Has a Growing Presence," *Variety*, March 19, 2015).

Despite being at FNC since 2005 (Compl. ¶ 1), it is now in 2015 that trade publications have

noted that Ms. Faulkner "may be getting more exposure" as FNC explores "new ideas."  Brian

Steinberg, "At Fox News Channel, Harris Faulkner Has a Growing Presence," *Variety*, March

19, 2015, cited in Compl. ¶ 7 & n.1.

**Ms. Faulkner's Complaint Against Hasbro**

Ms. Faulkner claims that the Hamster Toy makes "prominent and unauthorized use of

[her] name" and that "elements" of the Hamster Toy "bear a physical resemblance to [Ms.]

Faulkner's traditional professional appearance, in particular [the] tone of its complexion, the

shape of its eyes, and the design of its eye makeup."  Compl. ¶ 15.  However, a side-by-side

comparison of Ms. Faulkner and the Hamster Toy shows that the two bear absolutely no

resemblance.

In her Complaint, Ms. Faulkner alleges that "Hasbro misappropriated [her] name,

likeness, identity or persona without consent."  Compl. ¶ 16.  She asserts three causes of action

against Hasbro:  (1) direct liability for false endorsement under the Lanham Act, 15 U.S.C.

§ 1125(a); (2) contributory liability for false endorsement under the Lanham Act, 15 U.S.C.

§ 1125(a); and (3) violation of the right of publicity.  Compl. ¶¶ 20-47. This motion to dismiss is directed only at Ms. Faulkner's claim for violation of her right of publicity.

## STANDARD ON A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal if a cause of action fails to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  However, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss under Rule 12(b)(6), "courts must consider the complaint in its entirety." *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).  This includes "examining additional sources courts normally consider when ruling on a motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (quotations omitted).  *See also Buck.*, 452 F.3d at 260 ("In evaluating a motion to dismiss, we may consider . . . any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'") (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

On this motion, Hasbro relies on the Complaint, as well as the Hamster Toy, the packaging in which it was sold, and Ms. Faulkner's likeness, all of which are both integral to Ms. Faulkner's claims and incorporated directly or by express reference throughout her Complaint. *See, e.g.*, Compl. ¶¶ 1, 12, 13, 15, 17, 18.  For the reasons set forth below, the Complaint fails to state a claim for right of publicity and that claim should be dismissed.

5

**ARGUMENT**

**MS. FAULKNER FAILS TO STATE A CLAIM FOR
A VIOLATION OF HER RIGHT OF PUBLICITY BECAUSE
HASBRO DID NOT MISAPPROPRIATE MS. FAULKNER'S IDENTITY**

Ms. Faulkner's right of publicity claim fails because she does not and cannot allege that Hasbro misappropriated *her* identity.  While Ms. Faulkner alleges that she and the Hamster Toy share the same name, as shown below, that allegation is not enough.  The mere use of a real person's name for a fictional character is not actionable as a right of publicity claim absent additional evidence that the unique *identity* of that person has been misappropriated.  And while Ms. Faulkner contends that the Hamster Toy misappropriated her appearance as well, a comparison of the miniature hamster toy and the human Ms. Faulkner reveals that the allegation is implausible on its face, as no reasonable fact-finder could conclude that the two bear any resemblance to one another.  Accordingly, Ms. Faulkner's Third Cause of Action should be dismissed with prejudice.

**A.      A Right of Publicity Claim Requires Misappropriation of Identity**

New Jersey, like most states, recognizes a common law cause of action for right of publicity.[2]  This cause of action, first recognized by New Jersey state courts in the early twentieth century, "grew out of the right to privacy torts, specifically, from the tort of 'invasion of privacy by appropriation.'"  *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013), *cert. dismissed*, 135 S. Ct. 43, 189 L. Ed. 2d 894 (2014) (quoting J. Thomas McCarthy, The Rights of Publicity and Privacy § 1:23 (2d ed. 2012) (hereinafter "McCarthy")).[3]  Today, as the Third

---

[2] In addition to relying upon New Jersey law, this memorandum also draws upon cases from other jurisdictions that have addressed the issues presented here.  While certain of those jurisdictions (including New York) have a statutory cause of action and/or may refer to the cause of action by different terms (*e.g.*, "misappropriation of identity" or "invasion of privacy by misappropriation"), the underlying principles for which the cases are cited apply equally here.

[3] J. Thomas McCarthy is the author of a leading treatise on the right of publicity and related torts and has been relied upon by the Third Circuit as well as federal and state courts in New Jersey.

6

Circuit recently noted, "the current incarnation of the right of publicity in New Jersey is that set forth in the Restatement (Second) of Torts (1977)." *Hart*, 717 F.3d at 151 (citing Restatement (Second) of Torts § 652C (hereinafter, the "Restatement")).

While growing out of the privacy torts, courts and commentators have long explained that the right of publicity is intended "to protect the property interest that an individual gains and enjoys *in his identity* through his or her labor and effort." *Hart*, 717 F.3d at 151 (emphasis added). Thus, while a violation of the right of publicity occurs when "[o]ne who appropriates to his own use or benefit the name or likeness of another," Restatement § 652C, the misappropriation is only actionable insofar as it trades on the person's *identity*. *Id.*, Comment a. ("The interest protected by the rule . . . is the interest of the individual in the *exclusive use of his own identity, in so far as it is represented by his name or likeness*, and in so far as the use may be of benefit to him or to others.") (emphasis added). Accordingly, "[r]ight of publicity case law routinely states that the plaintiff must plead and prove that defendant's use 'identifies' plaintiff." McCarthy § 3:18.

**B.      Mere Use of Another Person's Name is Not Enough to Establish a Claim for Right of Publicity**

Given the requirement of demonstrating that one's unique *identity* was misappropriated, courts and commentators analyzing right of publicity claims universally recognize that "it is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff." Restatement § 652C, Comment c. *See also* McCarthy § 3:18 ("mere name-sameness of a fictional character is not sufficient identifiability. Something more is needed."). Rather, to establish that one's right of publicity has been violated, a plaintiff must show that the defendant

---

*See, e.g.*, *Hart v. Elec. Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013); *Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337 (D.N.J. 2000); *Kinsella v. Welch*, 362 N.J. Super. 143, 156, 827 A.2d 325, 332 (App. Div. 2003).

"pass[es] himself off as the plaintiff or otherwise seek[s] to obtain for himself the values or benefits of the plaintiff's name or identity."  Restatement § 652C, Comment c.  Absent such an appropriation, "the defendant is free to call himself by any name he likes, whether there is only one person or a thousand others of the same name."  *Id.*

J. Thomas McCarthy describes the "something more" that is needed in addition to name-sameness as "plus factors."  McCarthy § 4:49 ("Since many persons have the same name, mere name-sameness alone should not be sufficient proof of identification. There must be some 'plus factors' in the context of defendant's use which support an identification of plaintiff.").  Requiring plus factors before permitting a right of publicity claim to proceed recognizes that proper names, even unusual ones, are not the property of any single person.  As one court explained:

> Persons whose names are similar to those used in fiction are, perhaps, unduly sensitive about anything that is written concerning the portrayed character and are quick to attribute such references to themselves.  As long as fiction is written, this is often unfortunate but nevertheless impossible of complete avoidance.  A person with such sensitivities has, nevertheless, no legal basis for complaint unless not only does the name used completely and accurately coincide with his, but also the context singles him out and points to him, as does a portrait or picture, as the person referred to.  Both ingredients must be present, as the mere use of the name is not enough and the portrayal of the character without the concomitant use of such name is likewise insufficient.

*People on Complaint of Maggio v. Charles Scribner's Sons*, 205 Misc. 818, 824, 130 N.Y.S.2d 514, 520 (N.Y. Magis. Ct. 1954).  *See also* McCarthy § 4:49 ("It is clear that mere name-sameness of a fictional character is not sufficient identifiability to trigger a right of publicity claim.  If the only similarity is name-sameness, then plaintiff is not identifiable from the same-named character in a novel.").

Right of publicity claims, like any claim that will impede expressive speech, must be balanced against the protections afforded by the First Amendment.  *See Hart*, 717 F.3d at 148

(because a video game is considered expressive speech, a right of publicity claim must be examined under First Amendment principles).  By requiring the plaintiff to show that her identity, and therefore her property interest was misappropriated or privacy invaded, the "plus" factor reconciles the tension between a person's right of publicity, on the one hand, and a creator's right to name fictional characters as he or she chooses, on the other hand.  Otherwise, litigants could stifle expressive speech by asserting a monopoly over their proper names.  *See, e.g.*, *Swacker v. Wright*, 154 Misc. 822, 823, 277 N.Y.S. 296, 298 (Sup. Ct. 1935) ("The [misappropriation] statute was enacted to protect the privacy of persons, not to redress imagined wrongs or to subject authors and publishers to hazards against which it is well-nigh impossible to guard.").

In recognition that identity of name is not enough to establish a right of publicity claim, courts in New Jersey and in other jurisdictions consistently have dismissed claims for failing to plead the requisite "plus" factor.  In *Botts v. New York Times Co.*, 106 F. App'x 109, 110 (3d Cir. 2004), plaintiffs with the name "Larry Botts" had asserted misappropriation claims in connection with an advertisement that depicted "a fictional African-American male [named 'Larry Botts'] who turned to alcohol and 'wasted' his mind because he could not afford a college education." *Id.* at 110.  In affirming the dismissal of the complaint, the Third Circuit noted that, while the advertisement used the name "Larry Botts" for a commercial purpose, it "clearly did not misappropriate the plaintiffs' *identity*." *Id.* at 110-11 (emphasis in original).  The court found that no one would identify the fictional "Larry Botts" in the advertisement, a "prototypical underprivileged African-American youth," with the Caucasian, college-educated plaintiffs because the only common characteristic was the name.  *Id.*  Name alone was not enough.

Similarly, in *Allen v. Gordon*, 86 A.D.2d 514, 515, 446 N.Y.S.2d 48, 49 (1st Dep't 1982), *aff'd,* 56 N.Y.2d 780 (1982), New York's Court of Appeals affirmed the dismissal of a

9

psychiatrist's claim for misappropriation of identity where a fictional psychiatrist in a novel bore the same name—"Dr. Allen"—as the psychiatrist plaintiff.  The appellate court held that the plaintiff could not establish that his identity was misappropriated where "there [was] no clear identification of plaintiff in the portrayal of the character 'Dr. Allen' in the book which would prompt a rational reader to conclude that plaintiff was being described."  *Allen*, 86 A.D.2d at 515, 446 N.Y.S.2d at 49.  The "mere fact that [the plaintiff] is the only psychiatrist surnamed Allen in Manhattan" was insufficient to state a claim as there was "nothing in the complaint showing that the book was about or referred to the plaintiff."  *Id.*  Again, name alone (even coupled with a common profession in the *Allen* case) was not enough.

Mere use of the plaintiff's name also was not enough in *Maggio v. Charles Scribner's Sons*.  In that case, the court dismissed plaintiff's misappropriation claim where, "except for the alleged identity of name, none of the things which the character 'Angelo Maggio' [did] in the book, nor any of the details of the background and life of 'Angelo Maggio' as set forth in the book, [were] claimed by the complainant to be a portrayal of him or of his life and [did] not in anywise point to or identify him as the person intended or referred to."  *Maggio*, 205 Misc. at 820.

Even where plaintiffs have unusual or fanciful-sounding names, courts have dismissed right of publicity claims where there were no "plus" factors.  *See, e.g.*, *Nebb v. Bell Syndicate*, 41 F. Supp. 929, 929 (S.D.N.Y. 1941) ("Apparently the defendants, who publish a comic strip in a newspaper in Tarrytown, New York, happened to describe one of their obviously fictitious characters as 'Rudy Nebb' with no intention of referring to the Rudy Nebbs of Georgia, whom the defendants had never before heard of."); *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1061-62 (N.D. Ill. 1982) (dismissing misappropriation claim by plaintiff T.J.

10

Hooker because his "conclusory allegation cannot substitute for allegations of facts showing that the defendants used the name 'T.J. Hooker' as a means of pirating plaintiff's identity").

In sum, the lead commentators and cases are clear that mere use of another's name is not sufficient to establish that one's identity has been misappropriated or right of publicity has been violated.

### C.    Ms. Faulkner's Claim that the Hamster Toy Bears Her Likeness is Implausible as a Matter of Law

In recognition of the fact that her right of publicity claim cannot be based solely on identity of name, Ms. Faulkner, in her Complaint, attempts to manufacture a "plus" factor by contending that elements of the Hamster Toy "bear a physical resemblance to [her] traditional professional appearance, in particular [the] tone of its complexion, the shape of its eyes, and the design of its eye makeup."  Compl. ¶ 15.  However, under the pleading standards set forth in *Iqbal* and *Twombly*, the Court should not accept Plaintiff's opinion that the inch-tall hamster toy bears Ms. Faulkner's resemblance, but instead must conduct its own comparison to determine whether the allegations are plausible as a matter of law.  *See, e.g.*, *Iqbal*, 556 U.S. at 663-64 ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.").[4]

---

[4] In the analogous copyright context, the Third Circuit has endorsed the district court's conducting an independent analysis of the materials at issue on a motion to dismiss to determine whether the plaintiff stated a plausible copyright claim.  *See Tanikumi v. Walt Disney Co.*, No. 15-1959, 2015 WL 5693125, at *3 (3d Cir. Sept. 29, 2015) (affirming a finding of no substantial similarity because "the District Court did not err in considering the works to determine that [the plaintiff] had failed to state a plausible copyright infringement claim").  *See also Harding v. Paramount Pictures*, No. 12 Civ. 66 (DAB)(HBP), 2013 WL 174401, at *10-11 (S.D.N.Y. Jan. 16, 2013) (dismissing misappropriation claim after conducting a "side-by-side comparison of the Video Game Character and Plaintiff's appearance" based on court's determination that there was "simply no resemblance between the Video Game Character and Plaintiff").

As demonstrated by even a cursory comparison of Ms. Faulkner and the Hamster Toy, the two look nothing alike:



*First*, Ms. Faulkner is an adult, African-American, human, female newscaster; the Hamster Toy is an inch-tall, cartoon-like plastic animal, which has no apparent gender or profession, or even clothing that might identify its gender or profession.  *See* Wogan Decl. Ex. B. No one could possibly identify the fictional Hamster Toy with Ms. Faulkner based on their appearance.  *See Botts*, 106 F. App'x at 110-11 (finding no identity of likeness between "prototypical underprivileged African-American youth" and Caucasian, college-educated plaintiff).

*Second*, contrary to Plaintiff's allegation, the Hamster Toy does not have the same "complexion" as Ms. Faulkner.  The animal depicted by the Hamster Toy has "fur" (not skin), which is golden yellow, a wisp of "hair" that is medium-brown, a pink nose, and a muzzle that is white.  *See* Wogan Decl. Exs. A-B.  No reasonable viewer of the Hamster Toy could conclude that its animal fur coloring bears any resemblance to Ms. Faulkner's human skin complexion such that it *identifies* Plaintiff.

12

*Third*, despite Plaintiff's claim, neither the "shape" of the Hamster Toy's eyes, nor the "design of its eye makeup" misappropriate Ms. Faulkner's likeness.  Compl. ¶ 15.  Ms. Faulkner has brown, almond-shaped eyes; the Hamster Toy has large, circular blue eyes.  Wogan Decl. Ex. D.  And indeed, as Ms. Faulkner herself pleads, *all* of the Littlest Pet Shop toys have "exaggerated features," including "disproportionately large heads and eyes."  Compl. ¶ 12.  The Benson Detwyler toy (sold together with the Hamster Toy), as well as the entire Littlest Pet Shop series depicted in the packaging, has the same large eyes and long eyelashes as the Hamster Toy. *See* Compl. ¶ 13; Wogan Exs. A-B.  Thus, there is nothing special about the eyes of the Hamster Toy that would cause a person to identify them with Ms. Faulkner's eyes.  Similarly, there also is nothing unique about the "shape" of Ms. Faulkner's eyes, or the "design" of her eye makeup that somehow identifies the Hamster Toy with her appearance.  *See* Wogan Decl. Ex. C.

## D.  The Opposite Contexts in Which the Hamster Toy and Ms. Faulkner Exist Conclusively Demonstrate that Hasbro Did Not Misappropriate Plaintiff's Identity

Ms. Faulkner's right of publicity claim fails as a matter of law not only because the Hamster Toy looks nothing like her, but also because Plaintiff does not and cannot allege that "the context singles [her] out and points to [her] . . . as the person referred to."  *Maggio*, 205 Misc. at 824.  To the contrary—Ms. Faulkner's world of Fox News is so completely at odds with the Hamster Toy's imaginary world of Littlest Pet Shop that the court should treat the stark contextual difference as a "minus" factor warranting dismissal.

Context plays a pivotal role in determining the viability of right of publicity claims. Thus, in *Hooker v. Columbia Pictures Indus., Inc.*, the court dismissed a right of publicity claim brought by a woodcarver named T.J. Hooker, holding that there was no basis to find that a fictional policeman in a television drama with the same name in any way referred to the plaintiff. *Hooker*, 551 F. Supp. at 1062 (citing Restatement § 652C).  Similarly, in *Bates v. Cast*, the court

affirmed the dismissal of an appropriation claim where plaintiff's name was used in a fictional novel about vampires.  The court found that "[n]o reasonable reader of the Defendants' book would believe that the fictional character, Erin Bates, depicts Plaintiff, the 'real' Erin Bates, acting in the way portrayed in the book." *Bates v. Cast*, 316 P.3d 246, 254 (Okla. Civ. App. 2014).  The court noted that, unless there was "clear identification of plaintiff in the portrayal of the character," the misappropriation claim must be dismissed. *Id.  See also Swacker*, 154 Misc. at 823, 277 N.Y.S. at 298 ("Apart from the use of the name 'Swacker,' there is not a single parallel between the plaintiff and the character depicted in the books.  No person familiar with the plaintiff could possibly infer from a reading of the books that the secretary to the district attorney was intended to portray the plaintiff[.]").

Here, nothing about the context in which the Hamster Toy exists points to any identifying features of Ms. Faulkner's persona.  Indeed, the human Harris Faulkner is a journalist, author, and Fox News anchor; the fictional Harris Faulkner is a cartoon-like toy animal who resides in the Littlest Pet Shop world designed for young children.  The Hamster Toy does not have an identifiable gender, does not have a profession and does not have any biographical or contextual attributes that make reference to Ms. Faulkner's public persona.  Nothing about the Hamster Toy, other than its name, bears any resemblance to Ms. Faulkner.  In fact, the fictional Hamster Toy is about the furthest thing from Ms. Faulkner or her persona.

**CONCLUSION**

Ms. Faulkner's right of publicity claim must be dismissed because the only similarity between her and the Hamster Toy is the name, which is insufficient to establish that her identity was misappropriated under well-established law.  The Court should reject Ms. Faulkner's implausible contention that the Hamster Toy, one of hundreds of fictional characters in the make-believe world of Littlest Pet Shop, resembles her, especially in light of the opposite contexts in which Ms. Faulkner and the Hamster Toy exist.  For these reasons and the reasons stated above, Hasbro respectfully request that the Court grant its motion to dismiss the Third Cause of Action of the Complaint with prejudice.

Dated: New York, New York
          October 26, 2015

FRANKFURT KURNIT KLEIN & SELZ, PC


By:____/s/ Beth I. Goldman_____
          Maura J. Wogan (*admitted pro hac vice*)
          Jeremy S. Goldman (*admitted pro hac vice*)
          Anna Kadyshevich (*admitted pro hac vice*)
          Beth I. Goldman

488 Madison Avenue, 10th Floor
New York, New York 10022
mwogan@fkks.com
jgoldman@fkks.com
akadyshevich@fkks.com
bgoldman@fkks.com
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendant Hasbro, Inc.*

15