## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HARRIS FAULKNER, | : | HONORABLE KATHARINE S. HAYDEN |
| Plaintiff, | : | Civil Action No. 15-6518 (KSH)(CLW) |
| - against - | : | |
| | | Return Date: December 21, 2015 |
| HASBRO, INC., | : | |
| | | (Document Electronically Filed) |
| Defendant. | : | |
| | : | |

_____

## BRIEF OF PLAINTIFF HARRIS FAULKNER IN OPPOSITION TO DEFENDANT HASBRO, INC.'S PARTIAL MOTION TO DISMISS
_____

Paul J. Halasz
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054-2891
Tel.: (973) 966-6300
Fac.: (973) 966-1015
Email: phalasz@daypitney.com

Dori Hanswirth, Esq.*
Theresa House, Esq.*
Patsy Wilson, Esq.*
HOGAN LOVELLS US LLP
875 Third Ave.
New York, NY 10022
Tel.: (212) 918-3000
Fac.: (212) 918-3100
Email: dori.hanswirth@hoganlovells.com
*admitted *pro hac vice*

*Attorneys for Plaintiff Harris Faulkner*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................1

FACTUAL BACKGROUND...............................................................6

    A.  Plaintiff Harris Faulkner and Her Unique, Personal Brand ......................6

    B.  Hasbro Misappropriated Faulkner's Unique, Personal Brand in Order to Advertise and Market the Harris Faulkner Hamster Doll ........................9

    C.  Procedural History and Hasbro's Motion................................................12

ARGUMENT ......................................................................................12

    A.  The Unauthorized Use of a Well-Known Person's Name Is Sufficient to State a Claim for Right of Publicity under New Jersey Law ..................14

    B.  The Treatises' Views on "Name-Sameness" Do Not Apply to Recognizable Names or Where a Defendant Has Traded Off of the Value of That Name .......................................................................................22

        1.  *Hasbro Misreads McCarthy and the Restatement, Which in Fact Support Faulkner's Claim*.................................................................22

        2.  *Hasbro's Reliance on Non-Authoritative Cases Involving Plaintiffs Without Established Value in Their Names Is Unavailing* ................27

    C.  There Is No Such Thing as a "Minus Factor" Under New Jersey Law ...33

CONCLUSION .....................................................................................39

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdul-Jabbar v. Gen. Motors Corp.*,
    85 F.3d 407 (9th Cir. 1996) ...................................................................19, 20, 37

*Allen v. Gordon*,
    86 A.D.2d 514, 446 N.Y.S.2d 48 (1st Dep't 1982), *aff'd*, 56 N.Y.2d 780,
    452 N.Y.S.2d 25 (1982)...............................................................30, 31, 33, 39

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................12

*Bambu Sales, Inc. v. A&M Distrib.*,
    No. 87-1055 (AMW), 1988 WL 68923 (D.N.J. Jun. 29, 1988) ........................31

*Bates v. Cast*,
    316 P.3d 246 (Okla. Civ. App. 2014) .................................................................38

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................12, 13

*Botts v. New York Times Company*,
    106 F. App'x 109 (3d Cir. 2004) .....................................................27, 28, 29, 39

*Canessa v. J. I. Kislak, Inc.*,
    97 N.J. Super. 327 (Ch. Div. 1967) ............................................................15, 24

*Hart v. Elec. Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013) ....................................................................passim

*Hooker v. Columbia Pictures Indus., Inc.*,
    551 F. Supp. 1060 (N.D. Ill. 1982)...................................................................38

*Howell v. New York Post Co.*,
    81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993)........................................................32

*Kerby v. Hal Roach Studios*,
    53 Cal. App. 2d 207, 127 P.2d 577 (2d Dist. 1942) ..........................................31

*LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC.*,
   287 F.3d 279 (3d Cir. 2002) ..............................................................................37

*Liebholz v. Harriri*,
   No. CIVA 05-5148 DRD, 2006 WL 2023186 (D.N.J. July 12, 2006).........14, 21

*Mahan v. Hasbro, Inc.*,
   No. 6:15-cv-00188-RBD-GJK (M.D. Fla. filed Feb. 9, 2015).............................4

*McFarland v. Miller*,
   14 F.3d 912 (3d Cir. 1994) .......................................................................passim

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*,
   94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000).............................................................32

*Mitchell v. The Cartoon Network*,
   Civ. No. 15-5668 (D.N.J. Nov. 20, 2015) ..........................................................23

*Palmer v. Schonhorn Enters., Inc.*,
   96 N.J. Super. 72 (Ch. Div. 1967) ............................................................passim

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) ............................................................................20

*People on Complaint of Maggio v. Charles Scribner's Sons*,
   205 Misc. 818, 130 N.Y.S.2d 514 (N.Y. Magis. Ct. 1954)...................32, 33, 39

*Presley's Estate v. Russen*,
   513 F. Supp. 1339 (D.N.J. 1981) ................................................................ 15, 23

*Swacker v. Wright*,
   154 Misc. 822, 277 N.Y.S. 296 (Sup. Ct. Nassau Cnty. 1935) .........................38

*Tellado v. Time-Life Books, Inc.*,
   643 F. Supp. 904 (D.N.J. 1986)..................................................................20, 23

*Vanderbilt v. Mitchell*,
   72 N.J. Eq. 910 (1907).......................................................................................15

*White v. Samsung Elecs.*,
   971 F.2d 1395 (9th Cir. 1992) ...........................................................................34

STATUTES

15 U.S.C. § 1125(a) ...................................................................................12

N.Y. Civ. Rts. Law § 50 ........................................................................31, 32

N.Y. Civ. Rts. Law § 51 ........................................................................31, 32

FEDERAL RULES

Fed. R. Civ. P. 12 ......................................................................................21

Fed. R. Civ. P. 12(b)(6) ..............................................................................12

Fed. R. Civ. P. 16 ......................................................................................12

OTHER AUTHORITIES

Restatement (Second) of Torts § 652C ......................................................14, 25, 28

J. Thomas McCarthy, The Rights of Publicity and Privacy § 4:51 (2d ed.
    2012) .............................................................................................24

J. Thomas McCarthy, The Rights of Publicity and Privacy § 4:48 (2d ed.
    2012) .............................................................................................24

J. Thomas McCarthy, The Rights of Publicity and Privacy § 4:49 (2d ed.
    2012) .............................................................................................24

J. Thomas McCarthy, The Rights of Publicity and Privacy § 3:18 (2d ed.
    2012) .............................................................................................37

Plaintiff Harris Faulkner respectfully submits this Memorandum of Law in Opposition to Defendant Hasbro, Inc.'s ("Defendant" or "Hasbro") Partial Motion to Dismiss the Third Cause of Action of the Complaint ("Mot." or "Motion").

## PRELIMINARY STATEMENT

Hasbro argues that the "mere use" of a well-known person's name on a commercial good is insufficient to plead a claim for misappropriation of the right of publicity under New Jersey's common law. Fortunately for Faulkner (and other public personae with valuable publicity rights), Hasbro's argument is untethered to the factual allegations of the Complaint, is at odds with established New Jersey law, and misconstrues the (non-authoritative) secondary sources, out-of-state case law, and invented concepts of law that it unpersuasively urges this Court to adopt. Hasbro's argument should be rejected, and its Motion denied in full.

To begin, Hasbro falsely portrays Faulkner's misappropriation claim as being based "solely" on her name and the statement in Paragraph 15 of the Complaint that "elements of the Harris Faulkner Hamster Doll also bear a physical resemblance to Faulkner's traditional professional appearance…." This argument, however, takes Faulkner's 3,600-plus word Complaint [Dkt. No. 1] and disingenuously attempts to cut it down to fewer than 40, with the result of completely ignoring 99 percent of the allegations underlying Faulkner's claim.

When the Complaint is read in full, as it must be, it is clear that Faulkner has

1

set forth detailed allegations, which Hasbro does not and cannot deny at this stage, that she is a "nationally known, six-time Emmy award-winning journalist" who is "ubiquitous" on the nation's number-one rated cable news network, who appears on the air six days a week in a variety of programs, and who has a "distinctive" persona and a "unique and valuable" name.  (Compl. ¶¶ 1, 7.)  Faulkner further alleges, and again Hasbro cannot deny in this Motion, that she has spent over twenty years working as a newscaster, television show host, radio show host, professional speaker, and author and as a result has developed a "personal brand and laudable professional reputation," that she "has also established herself as an accomplished author and public speaker" and "is also well known as an advocate of anti-stalking legislation," and that she commonly references her experiences as a working mother in her professional activities.  (*Id.* ¶¶ 1, 2, 7, 10.)

Thus, Faulkner is not simply claiming that she is a private person who, by happenstance, shares a generic name that Hasbro coincidentally used in a book or a movie.  Quite the contrary, Faulkner alleges—and again, Hasbro does not deny, because it cannot—that her name is unique (especially when used to refer to someone who is female), that she is well-known, and that her name and persona have commercial value.  She further alleges that Hasbro "appropriated Faulkner's unique and valuable name and distinctive persona for its own financial gain," and that it did so "willfully" and "for the purpose of capitalizing off of her good name

and persona." (*Id.* ¶¶ 1, 16, 44.)  And this is not merely a naked legal conclusion—Hasbro cannot contest Faulkner's allegations that it used Faulkner's exact first and last names, with precisely the same, unique spelling of them both, as a purported "trademark" to add value and assist in selling a commercial good (the "Harris Faulkner Hamster Doll"), as well as the Littlest Pet Shop line of toys and products as a whole.  (*Id.* ¶¶ 13-15.)  Further, even at this early, pre-discovery juncture, Faulkner has alleged actual consumer confusion, wherein Hasbro's use of her name has in fact caused the Harris Faulkner Hamster Doll to be identified with Faulkner herself and in fact created a mistaken belief that she endorsed it.  (*Id.* ¶ 24.)  Faulkner's Complaint therefore alleges that Hasbro named and designed the Harris Faulkner Hamster Doll—an uncontestedly commercial use—with *the actual result* of attracting consumer interest by trading off of Faulkner's valuable name.

This is precisely the kind of conduct that New Jersey's misappropriation law is designed to prevent.  For over a hundred years, New Jersey has recognized a common-law cause of action for misappropriation of the right of publicity based on the use of a recognizable person's name for commercial purposes without that person's consent.  Indeed, New Jersey has long recognized that celebrities, in particular, must be able to protect their personal brands, including their names. Any other rule would defy common sense—indeed, had Hasbro been challenged for naming a Littlest Pet Shop doll "Taylor Swift," "Michael Jordan," or

"Anderson Cooper," there would be no doubt that Hasbro were capitalizing on the value of those recognizable names. Yet under Hasbro's logic, as long as the doll was an animal with no apparent profession, Hasbro could do so with impunity, and these individuals would have no recourse.[1] Such a scenario is not far-fetched. Hasbro is facing a nearly identical suit in the United States District Court for the Middle District of Florida over the Littlest Pet Shop doll "Vinnie Terrio," which was named after the choreographer who helped to inspire *Saturday Night Fever.*

In making its specious argument, Hasbro's Motion omits any reference at all to *McFarland v. Miller*—a decision by the United States Court of Appeals for the Third Circuit on misappropriation under New Jersey law, which recognized the economic value of the name of a public persona and held that the unauthorized use of such a name is actionable under New Jersey law. 14 F.3d 912 (3d Cir. 1994). Rather than acknowledge this inconvenient precedent, Hasbro instead ignores it in favor of attempts to manufacture additional legal elements, "plus factors," that it says are required to state a claim. (*Id*. 7.) However, Hasbro does not cite to a single New Jersey case that formulates a publicity claim in these terms—because these elements are not, in fact, required in a case involving a recognizable name.

---

[1] *See generally* Complaint, *Mahan v. Hasbro, Inc.*, No. 6:15-cv-00188-RBD-GJK (M.D. Fla. filed Feb. 9, 2015); "'Dance Fever' Host Objects to How Figurine Knocks Off 'Signature Dance Moves,'" *The Hollywood Reporter* (February 10, 2015) (*available at* http://www.hollywoodreporter.com/thr-esq/dance-fever-host-objects-how-772304 (accessed Nov. 30, 2015)).

What's worse, in advancing these specious arguments, Hasbro has withheld critical information from the Court.  An entire section of its brief is devoted to the principle that "Ms. Faulkner's world of Fox News is so completely at odds with the Hamster Toy's imaginary world of Littlest Pet Shop that the [C]ourt should treat the stark contextual difference as a 'minus' factor warranting dismissal."  (*Id.* 13.) Specifically, it argues that "the human Harris Faulkner is a journalist, author, and Fox News anchor," whereas "the fictional Harris Faulkner is a cartoon-like toy animal who resides in the Littlest Pet Shop world designed for young children." (*Id.* 14.)   Hasbro neglects to mention that *Hasbro's own website features promotional videos in which the Harris Faulkner Hamster Doll appears on a television news program called the <u>Littlest Pet Shop News</u>.* (*See generally* Declaration of Dori Ann Hanswirth, dated Dec. 7, 2015 ("Hanswirth Decl.").) (Faulkner provides these materials for the limited purpose of serving as an example of what may be found in discovery to support the pleadings.)  Contrary to Hasbro's argument, it is clear even at this early stage, without any discovery, that there is evidence showing that the Harris Faulkner Hamster Doll is *not* "the furthest thing from Ms. Faulkner or her persona."  (Mot. 14.)

In the absence of a valid legal basis to attack Faulkner's well-supported claims, Hasbro attacks allegations in the Complaint regarding the similar complexion, eye shape, and eye makeup design shared by Faulkner and the Harris

Faulkner Hamster Doll.  In doing so, Hasbro disingenuously frames Faulkner's Complaint as though she were alleging two separate publicity claims—one for misappropriation of her name, and one for misappropriation of her "likeness."  But this is not what the Complaint says at all.  To the contrary, the Complaint puts forward a single claim for misappropriation of Faulkner's identity and persona as demonstrated by the totality of the circumstances, including Faulkner's status as a well-known media personality with a distinctive personal brand, Hasbro's prominent and unauthorized use of Faulkner's name, as well as the allusions to certain of Faulkner's physical characteristics in the Harris Faulkner Hamster Doll.

In sum, Hasbro's Motion is factually and legally devoid of merit.  Faulkner has alleged facts supporting her claim that are more than adequate to entitle her to proceed with her claim and take discovery.  Hasbro's attempt to dissect or ignore the well-pleaded allegations in the Complaint, to import new concepts of law that are unrecognized in New Jersey and contrary to its historic commitment to protecting valuable names like Faulkner's, and to invite the Court to erroneously make value judgments that are not remotely appropriate for adjudication as a matter of law, all should be rejected.  Hasbro's Motion should therefore be denied.

## FACTUAL BACKGROUND

### A. PLAINTIFF HARRIS FAULKNER AND HER UNIQUE, PERSONAL BRAND

Faulkner is a uniquely named, acclaimed, veteran journalist and author who

has developed a persona and personal brand as a journalist, news anchor, television show host, radio show host, public speaker, and writer.  (Compl. ¶¶ 1, 7.)  As a result of this twenty-year career, Faulkner is "nationally known."  (*Id*. ¶ 7.)  In discovery, Faulkner will be able to show that she has long been the subject of news reports concerning her extraordinary success as a journalist.  Indeed, she has appeared as a "ubiquitous" news anchor and commentator on the nation's number-one rated national cable television news network for over ten years.  (*Id*.)  Today, Faulkner appears on the air six days a week reaching an audience of millions of households—as the anchor for Fox News' weekly, hour-long newscast of record, *Fox Report Weekend*; as a co-host on Fox News' enormously popular news and editorial program, *Outnumbered*, which airs five (5) days per week, Monday through Friday; as a substitute anchor for other live, current events, and news programming; and as a breaking news anchor.  (*See id*.)

During her tenure at Fox News, Faulkner has anchored key moments of the network's political news coverage, including the 2013 government shutdown, the 2013 State of the Union Address, the 2012 vice presidential debate, and the 2012 election night.  (*Id*. ¶ 8.)  She has also reported on significant international news events, including the fall of Tripoli in 2011 and the death of North Korea's Kim Jong-Il, as well as some of the most significant domestic news in recent memory, from the death of Whitney Houston, to the trial of George Zimmerman for killing

Trayvon Martin, and the Emanuel A.M.E. Church shooting in South Carolina. (*Id*.)   Since the filing of the Complaint, Faulkner has taken a leading role in covering the mass shooting at a Planned Parenthood facility in Colorado Springs, and the terrorist attack in San Bernardino, California.[2]

Faulkner is also well-known outside of her work for Fox News.   Prior to joining the network, Faulkner worked at a number of other local and national news organizations.   (*Id*. ¶ 9.)   Her substantial experience in news, television, and radio includes serving as a correspondent for the nationally syndicated television program, *A Current Affair*; as a substitute anchor on *The Nancy Grace Show*; as the host of *The Harris Faulkner Show* on FM107 Radio in Minneapolis, Minnesota; as the primary evening anchor for KSTP-TV in Minneapolis-Saint Paul; as the primary evening anchor for WDAF-TV in Kansas City, Missouri; and as an anchor and reporter in Greenville, North Carolina for WNCT-TV.   (*Id*.)

Faulkner is not only a newscaster.   She has also established herself as an accomplished author and public speaker.   (*Id*. ¶ 10.)   Faulkner is also "well known" as an advocate of anti-stalking legislation.   (*Id*.)   She is also a mother, and she commonly refers to her experiences as a working mother in her public activities

---

[2] "3 Dead in Shooting at CO Planned Parenthood Clinic, Gunman Identified," FoxNews.com   (Nov.   27,   2015)   (*available   at* http://insider.foxnews.com/2015/11/27/police-active-shooter-situation-planned-parenthood-clinic-colorado-springs) (accessed Dec. 7, 2015).

and, in particular, in her commentator positions.  (*See id.* ¶ 2.)[3]

As a result of Faulkner's long career in journalism, her professional integrity, and her hard work, Faulkner has been honored with six Emmy Awards, including Emmys in 2004 for Best Newscaster and Best News Special (*Eyewitness to War*).   (*Id.* ¶ 11.)   In April 2015, Faulkner was recognized as an innovator in the entertainment industry in *Variety*'s 2015 New York Women's Impact Report. (*Id.*)

## B. HASBRO MISAPPROPRIATED FAULKNER'S UNIQUE, PERSONAL BRAND IN ORDER TO ADVERTISE AND MARKET THE HARRIS FAULKNER HAMSTER DOLL

Hasbro's misappropriation of Faulkner's name, identity, and persona began in 2014 when Hasbro introduced the Harris Faulkner Hamster Doll to the Littlest Pet Shop line.  (*Id.* ¶ 13.)   The packaging containing the doll prominently displays both Faulkner's unique first and last names, spelled identically to the real "Harris Faulkner."  (*See id.* (containing photograph of the doll's packaging).)   The doll itself is an anthropomorphized hamster depicted with brown human-like hair, long, feminine eyelashes, a butterfly accessory, and a pink bow accessory.  (*See id.*)

Juxtaposed against the prominent display of Faulkner's unique name, elements of the doll's physical characteristics bear a resemblance to Faulkner's

---

[3] Sarah W. Caron, "Harris Faulkner on family, career, and balancing it all," sheknows.com (Jan. 30, 2013) (available at http://www.sheknows.com/parenting/articles/983021/harris-faulkner-on-family-and-career) (accessed Dec. 7, 2015).

9

professional appearance.  For example, they share a similar tone of complexion (which, for the doll, is more tan in color in person than it appears in photographs).  (*Id.* ¶ 15.)  The shapes of their faces are also similar, especially when viewed in profile.  The doll appears feminine, accompanied with a pink bow, a butterfly, long hair, and traditionally female eye makeup.  (*See id.* ¶ 13 (containing photograph of the doll with butterfly and pink bow accessories); Wogan Decl., Exs. B, D (containing photographs of the doll with butterfly accessory).)   The shape of their eyes and the design of their eye makeup is also very similar.  (Compl. ¶ 15.)

Hasbro's intent to use Faulkner's name for commercial and trade purposes is underscored by its display of a "TM" symbol after her name on the front of the Harris Faulkner Hamster Doll's packaging, as well as a statement on the back that this symbol "denote[s] U.S. Trademark[]," through which Hasbro—falsely— claims to own a United States trademark in "Harris Faulkner."  (*Id.* ¶¶ 13, 15.)  In addition to using Faulkner's name for the commercial purposes of advertising and trading the Harris Faulkner Hamster Doll, the packaging also directs consumers to Hasbro's website, wherein consumers can purchase and download other Littlest Pet Shop toys and entertainment products, including a cartoon program and electronic apps.  (*Id.* ¶ 17.)   Thus, the Complaint alleges that Hasbro is using Faulkner's name not just to sell the Harris Faulkner Hamster Doll, but to market its website and the entire line of Littlest Pet Shop products.  (*Id.*).

Hasbro's website features multiple Littlest Pet Shop toys in online videos. (*See generally* Hanswirth Decl.)  One such series of videos is called the Littlest Pet Shop News (the "LPS Newsroom Videos").  (*Id*., Exs. A, B.)  In the LPS Newsroom Videos, Littlest Pet Shop characters engage in news anchoring and reporting.  (*Id*.)  The Harris Faulkner Hamster Doll is featured prominently in the weather report of the LPS Newsroom Videos, although she does not speak.  (*Id*.)

Critically, Hasbro never sought—and Faulkner never gave—permission for Faulkner's name to be used in connection with the Harris Faulkner Hamster Doll, much less the Littlest Pet Shop line as a whole.  (Compl. ¶ 16.)  Nor did Faulkner assign, license, or otherwise consent to Hasbro using her name as a trademark. (*Id*.)  Further, Faulkner does not endorse products of any kind, as doing so would be a breach of journalistic ethics, would directly harm her professional credibility, and would be in violation of her contractual obligations to her employer.  (*Id*.) For this reason, Hasbro's use of Faulkner's name without consent, for its own profit, for the purpose of capitalizing off of her good name and persona, came at Faulkner's expense.  (*Id*. ¶ 16.)  As a result of Hasbro's actions, Faulkner has already seen evidence of actual consumer confusion regarding whether Faulkner has sponsored or approved the Harris Faulkner Hamster Doll, the Littlest Pet Shop product line, and/or Hasbro.  (*Id*. ¶ 24.)

## C. PROCEDURAL HISTORY AND HASBRO'S MOTION

Faulkner filed her Complaint on August 31, 2015, alleging two causes of action for false endorsement/unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and a third cause of action for a violation of Faulkner's right of publicity under New Jersey's common law.  (*See generally id.*)

Hasbro filed the Motion—a pre-answer motion to dismiss only the third cause of action pursuant to Rule 12(b)(6)—on October 26, 2015.  Hasbro does not argue that either of the first two causes of action for false endorsement/unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), are subject to dismissal.

The parties have not yet exchanged initial disclosures or any documents, no Rule 16 conference has been held, and no discovery has yet been made by either party.  An initial conference is set for February 18, 2016.

## ARGUMENT

## FAULKNER HAS STATED A CLAIM FOR MISAPPROPRIATION OF HER RIGHT OF PUBLICITY UNDER NEW JERSEY LAW

To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rather, a complaint "that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678.  Importantly, this "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing by the defendant. *Twombly*, 550 U.S. at 545.

The following explains why Hasbro's Motion should be denied.  *First*, the well-pleaded allegations in the Complaint establish that Hasbro made unauthorized use of a well-known person's name and thereby traded off of its value in selling commercial products, which is sufficient to state a claim for right of publicity under New Jersey law.  *Next*, Hasbro's citations to treatises and inapplicable cases for the proposition that "name-sameness" is not sufficient to state a claim simply do not apply where, as here, the plaintiff has alleged a recognizable name and persona that has value and that this value was misappropriated by the defendant. Rather, the "name-sameness" limitation can apply—to the extent it applies at all under New Jersey law—only to the limited circumstance of generic names of plaintiffs who lacked any public persona, and thus could not have enhanced the marketability of the underlying product.  *Furthermore*, contrary to Hasbro's argument, the appearance and context of the Harris Faulkner Hamster Doll are not "minus factors," even if that concept had any basis in New Jersey common law (which it does not); they in fact reinforce Faulkner's already strong evidence that Hasbro misappropriated the value of her name and persona.

13

**A. The Unauthorized Use Of A Well-Known Person's Name Is Sufficient To State A Claim For Right Of Publicity Under New Jersey Law**

Under New Jersey law, "[t]he right of publicity signif[ies] the right of an individual, especially a public figure or celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit." *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir. 1994) (citations and quotations omitted); *see also Palmer v. Schonhorn Enters., Inc.*, 96 N.J. Super. 72, 70 (Ch. Div. 1967) ("It is unfair that one should be permitted to commercialize or exploit or capitalize upon another's name, reputation *or* accomplishments merely because the owner's accomplishments have been highly publicized.") (emphasis added).

This protection applies both to names *and* to likenesses; misappropriation of either one violates the right of publicity, and has done so for one hundred years. *See, e.g., Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 151 (3d Cir. 2013) ("According to the Restatement [(Second) of Torts § 652C], '[o]ne who appropriates to his own use or benefit the name *or* likeness of another is subject to liability to the other for invasion of privacy.'") (emphasis added); *McFarland,* 14 F.3d at 919 ("Unauthorized use of an individual's name is nothing short of 'an appropriation of the attributes of one's identity.'"); *Liebholz v. Harriri*, No. CIVA 05-5148 DRD, 2006 WL 2023186, at *4 (D.N.J. July 12, 2006) (the right of publicity is invaded when "publicity is given for the purpose of appropriating to

14

[another]'s benefit the commercial or other values associated with the name *or* the likeness") (use of name of scientist and photograph of his lab, but not his likeness) (emphasis added); *Presley's Estate v. Russen*, 513 F. Supp. 1339, 1354 (D.N.J. 1981) (New Jersey courts "have recognized and supported an individual's right to prevent the unauthorized, commercial appropriation of his name *or* likeness") (emphasis added); *Palmer*, 96 N.J. Super. at 72  ("There is little doubt that a person is entitled to relief when his name has been used without his consent, either to advertise the defendant's product or to enhance the sale of an article.") (name and statistics of golfer Arnold Palmer, but no likeness); *id.*, 96 N.J. Super. at 79 ("It is unfair that one should be permitted to commercialize or exploit or capitalize upon another's name, reputation *or* accomplishments merely because the owner's accomplishments have been highly publicized.") (emphasis added); (*Vanderbilt v. Mitchell*, 72 N.J. Eq. 910, 920 (1907) (member of prominent family had property right to restrain a mother and child from claiming that the child was the plaintiff's legitimate son and from using his name).[4]

Multiple courts have held that misappropriation claims give individuals with recognizable public personae the right to protect the economic and professional value of their names.  *See, e.g., McFarland*, 14 F.3d at 922 ("The right to publicity

---

[4] The United States Court of Appeals for the Third Circuit has described *Palmer* as a "seminal case." *Hart*, 717 F.3d at 151.  *Vanderbilt* was also cited with approval in *Canessa v. J. I. Kislak, Inc.*, 97 N.J. Super. 327, 330 (Ch. Div. 1967).

protects the value a performer's identity has because that identity has become entwined in the public mind with the name of the person it identifies."); *Palmer*, 96 N.J. Super. at 79 ("Perhaps the basic and underlying theory is that a person has the right to enjoy the fruits of his own industry free from unjustified interference"). For example, in *Hart*, the United States Court of Appeals for the Third Circuit stated that, "New Jersey law therefore recognizes that '[t]he right to exploit the value of [an individual's] notoriety or fame belongs to the individual with whom it is associated,' for an individual's 'name, likeness, and endorsement carry value and an unauthorized use harms the person both by diluting the value of the name and depriving that individual of compensation.'"  *Hart*, 717 F.3d at 151 (quoting *McFarland*, 14 F.3d at 919, 923) ("the goal of maintaining a right of publicity is to protect the property interest that an individual gains and enjoys in his identity through his labor and effort" and "to encourage further development of this property interest").  Likewise, in *McFarland*, the Third Circuit similarly held that "infringement of a person's right to exploit commercially *his own name* . . . is a cause of action . . . under New Jersey law…."  14 F.3d at 914 (emphasis added); *accord Hart*, 717 F.3d at 150 ("right of publicity" developed in part to "protect[] publicly known persons from the misappropriation of their identities"); *Palmer*, 96 N.J. Super. at 78 ("Perhaps the basic and underlying theory is that a person has the right to enjoy the fruits of his own industry free from unjustified interference.  It is

unfair that one should be permitted to commercialize or exploit or capitalize upon another's name, reputation *or* accomplishments merely because the owner's accomplishments have been highly publicized.") (emphasis added).

*McFarland*—which is conspicuously absent from Hasbro's Motion—is instructive here.  That case involved a right of publicity claim initially brought by the actor George McFarland who played "Spanky" in the "Our Gang" movie and television series (and then continued by his successor after his death) against a defendant restaurant owner who named his restaurant "Spanky McFarland's."  *Id.*, 717 F.3d at 916.  In evaluating McFarland's claim, the Court confronted the issue of whether the fictional name "Spanky McFarland" had become so associated with the plaintiff George McFarland that he could assert a right of publicity in that name under New Jersey common law.   The Court ultimately said yes, reversing a lower court decision granting summary judgment in favor of the defendant and finding that "there exist[ed] at least a triable issue of fact as to whether McFarland had become so inextricably identified with Spanky McFarland that McFarland's own identity would be invoked by the name Spanky."  *Id.* at 921.[5]  Although the Court

---

[5] The Court necessarily determined that even the use of a nickname like Spanky, which differed from the plaintiff's legal name (there, George), can be sufficient to state a misappropriation claim if Spanky is the name by which the plaintiff is known.  *See id.* at 914.  In so ruling, the Court noted dicta from a Sixth Circuit case that the use of a celebrity's legal name may not be actionable where that name differed and was not recognizable as his public persona (*e.g.,* "J. William Carson"

noted that the defendant's restaurant also contained two murals of "Our Gang," which included depictions of the character Spanky, this was not a deciding factor or even a significant factor in the Court's analysis of McFarland's right of publicity in the *name* Spanky McFarland.  Rather, the plaintiff's claim focused on the use of the name, and the Court's analysis reached independent conclusions on whether "the name Spanky McFarland ha[d] become so identified with McFarland that it could be considered his own name or the name of a character so associated with him as to be indistinguishable from him in public perception."  *See id.* at 914.

Thus, *McFarland* establishes that a defendant need only use the recognizable name of a well-known individual for commercial purposes without permission in order to give rise to a cause of action for misappropriation of the right of publicity under New Jersey law.  *See id.*, 14 F.3d at 919 ("A famous individual's name, likeness, and endorsement carry value and an unauthorized use harms the person both by diluting the value of the name and depriving that individual of compensation.  Unauthorized use of an individual's name *is nothing short of 'an appropriation of the attributes of one's identity*.'") (emphasis added and citations omitted); *see also id.* at 922 ("In taking McFarland's name, Miller unfairly sought to capitalize on its value.  The very act of taking it for that purpose demonstrates

_____

or "J.W. Carson" may not be recognizable as the famous "Johnny Carson").  *Id.* at 920.  But here, there is no dispute that Hasbro made use of the exact full name and spelling that identifies Faulkner professionally.

the name itself has worth."). When, as here, a well-known person's "identity has become entwined in the public mind with the name of the person it identifies," misappropriation of that name appropriates the value of that identity, in contravention of the right of publicity. *See id.* at 921. This is so even if the defendant denies that the name was meant to refer to the plaintiff. *See id.* at 916 (defendant claimed that he picked the name, because "it sounded Irish and 'Spanky' was a nickname he had once used for his son").

The United States Courts of Appeals for the Ninth Circuit and the Sixth Circuit have come to similar conclusions and indicated that the unauthorized use of a person's name gives rise to a cause of action for common-law right of publicity even without the use of an accompanying image or likeness. For example, in *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407 (9th Cir. 1996), the Ninth Circuit examined whether an Oldsmobile commercial that, in a trivia question about college basketball, referred to Lew Alcindor—Kareem Abdul-Jabbar's birth name—without Abdul-Jabbar's consent gave rise to a cause of action for right of publicity under California common law.[6] The court held that it did, stating that,

_____

[6] The Third Circuit has endorsed the Ninth Circuit's approach to the right of publicity. *See Hart*, 717 F.3d at 158, n.23 ("Unlike in New Jersey, California's right of publicity is a matter of both the state's statutory law and its common law. This difference notwithstanding, the laws are strikingly similar—and protect similar interests.") (Internal citations omitted). As such, Ninth Circuit cases are instructive to the Court's present analysis.

"[t]o the extent GMC's use of the plaintiff's birth name attracted television viewers' attention, GMC gained a commercial advantage." 85 F.3d at 415. Notably, the court also held that "[w]hether or not Lew Alcindor 'equals' Kareem Abdul–Jabbar . . . is a question for the jury." *Id.* at 416. The court therefore reversed the lower court's ruling, which granted summary judgment to the defendant, and allowed the case to go forward even though Jabbar's likeness or image never appeared in the commercial and was not part of Jabbar's claim.

Similarly, in *Parks v. LaFace Records,* 329 F.3d 437, 461 (6th Cir. 2003), the Sixth Circuit rejected a claimed First Amendment defense and reversed summary judgment in favor of the defendant to permit Plaintiff Rosa Parks to proceed to trial on a misappropriation claim based on the use of her name in the title of a hip-hop song called "Rosa Parks." In that case, the defendants likewise did not use the plaintiff's image or likeness and arguably did not even refer to Parks in the substance of the song's lyrics.

The protections of this rule are not limited to individuals who have achieved celebrity status. *Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 909 (D.N.J. 1986) (New Jersey misappropriation claim is not limited to plaintiffs with "celebrity status," and even if New Jersey made such a distinction, a soldier depicted in a relatively well-known photograph from the Vietnam War would qualify as a public figure for such purposes). So long as the plaintiff's name is

used in a manner that exploits the value of her reputation, her right of privacy has been invaded. *See Liebholz*, 2006 WL 2023186, at \*4 (use of a non-celebrity scientist's name and a photograph of his lab—but not of him—on a website stated a claim sufficient to survive a Rule 12 motion to dismiss because plaintiff alleged that the use exploited his credentials, expertise, and professional reputation).

Here, Faulkner has alleged that Hasbro purposefully gave the Harris Faulkner Hamster Doll her exact first and last name, with identical spelling, that she uses in her professional endeavors, and also copied other of her attributes, and thereby traded off of the value of her name and purported endorsement and thereby attracted consumers. (Compl. ¶¶ 1, 17.)  In other words, this is not a case that risks subjecting a "publisher[] to hazards against which it is well-nigh impossible to guard," as Hasbro claims in the Motion. (Mot. 9.)  First, Hasbro is not acting as a publisher—it is selling a toy. *Cf. Liebholz*, 2006 WL 2023186, at \*4 ("Use of names and likenesses by non-media parties are different" from uses by a media defendant).  Furthermore, Faulkner is well-known; her unique name is entwined with her well-known identity; and her name is essential to that identity's value— value that Hasbro unjustly used when it appropriated her name without consent to sell a commercial good. *McFarland* demonstrates that this is more than sufficient to state a claim for misappropriation of the right of publicity under New Jersey common law, and the Sixth and Ninth Circuits agree with this sensible approach.

**B. The Treatises' Views on "Name-Sameness" Do Not Apply to Recognizable Names or Where a Defendant Has Traded Off of the Value of That Name**

In arguing that the commercial use of a public person's name without her consent is insufficient to give rise to a claim for misappropriation under New Jersey law, Hasbro asserts that some kind of "plus factors"—over and above the use of her distinctive, well-known, and valuable name—are required in order to identify the plaintiff. (Mot. 8.) In support of this erroneous theory, Hasbro cites to a treatise by Thomas McCarthy (J. Thomas McCarthy, The Rights of Publicity and Privacy (2d ed. 2012) ("McCarthy")), the Restatement (Second) of Torts (the "Restatement"), and various non-precedential cases that all exclusively concern misappropriation claims brought by private individuals who were not well-known and commonly admitted that their names had been selected by coincidence (as opposed to Faulkner's allegation here that her name was chosen to trade off of its value). (*See* Mot. 6–11.) None of these sources, however, stand for the proposition that a company can make unauthorized use of a well-known person's name on a commercial product. To the contrary, this body of law makes clear that the "name sameness" limitation Defendant urges here only comes into play when the plaintiff is a relatively private person *and* the defendant has not traded off the value of that person's name.

***1. Hasbro Misreads McCarthy and the Restatement, Which in Fact Support Faulkner's Claim***

22

In setting up the alleged rule of law that mere use of another's name is not sufficient to state a claim for misappropriation, Hasbro relies almost exclusively on McCarthy and the Restatement.  (*Id*. 7-8.)  Indeed, other than a *non sequitur* reference to the First Amendment,[7] it does not cite a single New Jersey case until two pages into its four-page argument on this section (and as set forth below, that case does not support its argument at all).  (*Id.* 7-11.)

Further, in relying on McCarthy and the Restatement, Hasbro ignores the parts of these treatises that are contrary to its argument.  For example, in McCarthy

---

[7] Hasbro makes passing statements that misappropriation claims based on expressive speech are limited by the First Amendment.  (Mot. 8, 9.)  Significantly, however, Hasbro does not even attempt to argue that its use of Faulkner's name and persona here was expressive or that the First Amendment excuses it—and it should not be permitted to assert any new argument to that effect on reply. Further, Hasbro's commercial exploitation of Faulkner's name assuredly would not qualify for First Amendment protection.  *See, e.g., Hart*, 717 F.3d at 158-61 (First Amendment will only bar publicity claim where use is significantly transformative, such as where it is used for reporting, fictionalized portrayal, lampooning, or social criticism); *Tellado*, 643 F. Supp. at 911-14 (misappropriation claim based on commercial use of plaintiff's likeness does not infringe on any First Amendment right); *Presley's Estate*, 513 F. Supp. at 1371 ("[T]he use of the individual's likeness or name in connection with the sale of such commercial products would not normally be considered an expression entitled to constitutional protection."). In arguing that the Harris Faulkner Hamster Doll has no relationship with Plaintiff, Hasbro has effectively disclaimed any transformative or commentary use of her name and persona.  Accordingly, this Court's recent decision in *Mitchell v. The Cartoon Network*, Civ. No. 15-5668 (D.N.J. Nov. 20, 2015) (available at https://assets.documentcloud.org/documents/2599904/bmitchell-ruling.pdf)— which we reference only because it was so recently published—has no relevance here.  The Court found that the plaintiff satisfied all elements of a misappropriation claim, but dismissed the case on First Amendment grounds because the defendants made use of the plaintiff's likeness in a transformative parody.

§ 4:51, which is not cited or discussed in the Motion at all, McCarthy states that "when a name alone is sufficient to establish identity, the defendant's use of that name satisfied the plaintiff's burden to show that a name was used as a symbol of identity."   (citation omitted).   Likewise, in Section 4:48, McCarthy notes that "several privacy and right of publicity cases have founded identification and liability in whole or in part upon a personal name."   And for this proposition, McCarthy cites two New Jersey cases—*Canessa*, 97 N.J. Super. at 327 (name and photo of noncelebrity) and *Palmer*, 96 N.J. Super. at 72 (name and statistics of golfer Arnold Palmer)—in sharp distinction to the discussion of "name-sameness" in Section 4:49, which does not cite any New Jersey cases at all.

McCarthy also acknowledges that the "[u]se of a name that distinguishes plaintiff is . . .  the most obvious use" of a plaintiff's identity, *id.* at § 3:7, and proposes that "[t]o establish liability, plaintiff need prove no more than that he or she is reasonably identifiable in defendant's use to more than a de minimis number of persons," *id.* at § 3:18.  Further, Section 4:49 is limited in its scope by other sections—which indicate that the "name-sameness" principle is a question of evidentiary weight that principally concerns names used for characters in creative works, not, as here, as trademarks for commercial goods.  *See* McCarthy at §§ 4:48 (noting that § 4:49 pertained only to the "evidentiary weight" of mere name-sameness alone), 3:16 (stating that the notion that "Identification Requires Name-

24

Sameness Plus More" originated in response to cases involving characters in novels, motion pictures, or other literary works), 4:49 ("If the only similarity is name-sameness, then plaintiff is not identifiable from the *same-named character in a novel*.") (emphasis added).  When read in full, therefore, McCarthy stands for the principle, at most, that where a person's name is not sufficient in itself to identify a plaintiff to more than a de minimis number of persons, something more may be required, at least for claims based on books or movies.  But where, as here, a person's name is recognizable and the use is for a commercial product, these principles would not apply.

Hasbro's reliance on the Restatement is also unavailing.  The Restatement in fact instructs that "[o]ne who appropriates to his own use or benefit the name *or* likeness of another is subject to liability to the other for invasion of his privacy." *See* Restatement § 652C (emphasis added).  Indeed, one of the illustrations provided in the Restatement is very similar to Faulkner's claims here:  "A is the President of the United States. B forms and operates a corporation, engaged in the business of insurance, under the name of A Insurance Company. This is an invasion of A's privacy."  *Id.* at Ill. 2.

Furthermore, the Restatement makes clear that the notion that mere "name-sameness" may not be sufficient to show misappropriation in certain cases simply *does not apply* where the plaintiff alleges that the defendant has "appropriated to

his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *See id*. cmt. c (1977). Thus, the Restatement instructs that name-sameness alone is insufficient to state a claim *only if* the defendant "does not [also] pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity." *Id.* By contrast, where "the value of the name has in some way been appropriated," the use of the name is actionable. *See id.*

Here, Faulkner has alleged that Hasbro used her name in order to appropriate for its own use and benefit the reputation, prestige, social or commercial standing, public interest, or other values of her name or identity. Specifically, she alleges that she is a well-known television anchor, author, speaker, and legislative policy advocate (Compl. ¶¶ 9–10); that she has a brand name with commercial value, which she utilizes in her capacity in the above roles (*id.* ¶¶ 1, 47); that by passing off the Harris Faulkner Hamster Doll as being associated with Faulkner (*e.g.*, through the use of her unique first and last name and spellings of the same, the inclusion of a TM symbol on the doll, and the attachment of Faulkner's name to other Littlest Pet Shop toys and products) and in fact causing actual consumer confusion as to whether she endorsed the product, Hasbro obtained for itself the values and benefits of Faulkner's name and identity (*id.* ¶¶ 24, 47); and that Hasbro's benefit has been at the expense of the value of Faulkner's brand name,

which has been harmed because Hasbro portrays Faulkner as having endorsed a product in violation of her journalistic ethics (*id.* ¶¶ 16, 18). Indeed, Faulkner has stated an entirely separate claim for false endorsement under the Lanham Act, which Hasbro has *not* sought to dismiss. Thus, her Complaint very clearly does allege, with abundant factual support, that Hasbro appropriated the value of her name. Further, the evidence of the LPS Newsroom Videos further reinforces Hasbro's appropriation of Faulkner's persona.

Thus, even under the principles established in the Restatement and McCarthy, Faulkner's claim is clearly valid.

### 2. Hasbro's Reliance on Non-Authoritative Cases Involving Plaintiffs Without Established Value in Their Names Is Unavailing

The cases that Hasbro cite drive this point home. First, Hasbro cites *Botts v. New York Times Company*, 106 F. App'x 109 (3d Cir. 2004), which is an unpublished, non-precedential decision by the Third Circuit. Although the Third Circuit does not prohibit parties from citing to unpublished opinions issued prior to January 1, 2007, such opinions are not binding in subsequent cases and have no precedential value. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, IOP 5.7 (2015) ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."). Furthermore, in *Botts*, the plaintiffs were unknown private persons who

did not claim to be public figures or media personalities of any kind.  And the lead

plaintiff's name—Larry Botts—was also decidedly ordinary.  The plaintiffs did no

more than allege that the defendants coincidentally gave the lead plaintiff's same

name to a fictional character portrayed in the defendant's commercial.    In

dismissing the plaintiffs' complaint, the court stated:

> The name "Larry Botts" merely functions as "John Doe" or "Jane
> Roe," i.e., as a *generic placeholder* for the prototypical
> underprivileged African-American youth.  Indeed, the advertisement's
> effectiveness as a fundraising tool would be significantly
> compromised if readers actually associated the name "Larry Botts"
> with plaintiff Lawrence Botts III-a college-educated Caucasian.

*Botts*, 106 F. App'x at 110–11 (emphasis added).

Indeed, in the District Court opinion in the same case, the Court held that the

defendants would have been liable for invasion of plaintiffs' privacy if they

"appropriated to their own use or benefit the reputation, prestige, social or

commercial standing, public interest or other values associated with the plaintiffs'

name or likeness," or sought "to obtain for himself the values or benefits of the

plaintiff's name or identity."  *Botts v. New York Times Co.*, No. 03-1582, 2003 WL

23162315, at *7 (D.N.J. Aug. 29, 2003) (citing the Restatement § 652C), *aff'd*, 106

F. App'x 109 (3d Cir. 2004).    Accordingly, an essential part of its ruling

dismissing the claim was that "the name Botts does not appear to carry any special

'reputation, prestige, social or commercial standing, public interest or other value'

that would benefit defendants" and that "[t]he use of plaintiffs' name does not add

value to or assist in selling the ad." *Id.*

By contrast, the name "Harris Faulkner" is not simply a "generic placeholder" for a traditional archetype.  Harris Faulkner is a very unusual name, and is made all the more unique when applied to a female, given that the name Harris is traditionally male.  (As discussed *infra,* 33–36, Hasbro's claim that the Harris Faulkner Hamster Doll "has no apparent gender" is unsupportable.  (Mot. 12.)  The doll has traditionally female attributes, such as long eyelashes, a butterfly accessory, and a pink bow accessory, in contradistinction to a number of other Littlest Pet Shop dolls.  In any case, this is a factual issue that is ripe for testing in discovery and for evaluation by a jury.)  Moreover, whereas in *Botts* the Appeals Court observed that "the advertisement's effectiveness as a fundraising tool would be significantly compromised if readers actually associated the name 'Larry Botts' with [the] plaintiff," and the District Court found that Botts' name had no value and did not add value to the defendants' product, here, in sharp contrast, Faulkner is a celebrity whose name carries great value and which she alleges was used to assist in selling the Harris Faulkner Hamster Doll and the Littlest Pet Shop line of products as a whole.  As noted by the Third Circuit in *McFarland*, "[a] famous individual's name, likeness, and endorsement carry value and an unauthorized use harms the person . . . by diluting [that] value."  *McFarland*, 14 F.3d at 919 ("At its heart, the value of the right of publicity is associational. People link the person

with the items the person endorses and, if that person is famous, that link has value.").

Hasbro's reliance on *Allen v. Gordon*, 86 A.D.2d 514, 446 N.Y.S.2d 48 (1st Dep't 1982), *aff'd*, 56 N.Y.2d 780, 452 N.Y.S.2d 25 (1982) is equally unavailing. To begin, the plaintiff in *Allen*, a Manhattan psychiatrist who also did not claim to be a public figure, sued the defendant for libel and invasion of privacy because the defendant named one of the characters in his novel "Dr. Allen."  The court dismissed the plaintiff's claim *not* because "name alone . . . is not enough" to identify an individual under any circumstances, as Hasbro claims in its Motion (Mot. 10), but rather after finding:

> [the plaintiff Allen] *conceded* that defendant Gordon was never treated by plaintiff, *that the name "Dr. Allen" used in said defendant's book was selected at random as a commonly used name*, that no first name and no physical description of the person called "Dr. Allen" was given in the book (other than he had an "angular" face), that the location of the office of "Dr. Allen" in the book is different from the location of plaintiff's office and that there was a disclaimer prominently displayed immediately prior to the first page of the text which indicated that all names used, other than defendant Gordon's, were fictitious.

*Allen*, 86 A.D.2d at 515, 446 N.Y.S.2d at 49 (emphasis added).

By contrast, here, Faulkner alleges that her name is unique, that Hasbro uses both her first and last name, that her name was *not* random but rather was used to trade off of the value of her celebrity and persona, and that the physical appearance of the Harris Faulkner Hamster Doll incorporates aspects of her professional

30

appearance.   Faulkner also alleges that Hasbro falsely claimed to have a trademark—*i.e.*, a mark designating origin or sponsorship[8]—in the name "Harris Faulkner," and that Hasbro successfully caused actual consumer confusion regarding Faulkner's association with the Harris Faulkner Hamster Doll and the Littlest Pet Shop line as a whole.  (*See generally* Compl. ¶¶ 1, 20–47.)  *See Kerby v. Hal Roach Studios*, 53 Cal. App. 2d 207, 213, 127 P.2d 577, 581 (2d Dist. 1942) (plaintiff was identifiable by the name of a character in a movie as used in a publicity stunt where many people in fact identified plaintiff, even though defendants had "no intent to refer therein to plaintiff and did not know of her existence, although they might easily have discovered it").

Furthermore, the plaintiff in *Allen* brought his claims under §§ 50–51 of the New York Civil Rights Law.  *See* 86 A.D.2d at 515, 446 N.Y.S.2d at 50.  This is a material distinction from New Jersey's common-law misappropriation claim. Section 51 is a limited statutory remedy—perhaps the most limited statute of its kind in the nation—that is distinct from the common law of privacy.  Indeed, the New York Court of Appeals has repeatedly held in no uncertain terms that "New York does not recognize a common-law right of privacy."   *Messenger ex rel.*

---

[8] *See Bambu Sales, Inc. v. A&M Distrib.*, No. 87-1055 (AMW), 1988 WL 68923, at *1 (D.N.J. Jun. 29, 1988) ("[A] trademark is a distinctive mark, symbol or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others.").

*Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 54 (2000).  *See also Howell v. New York Post Co.*, 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354 (1993) ("While the courts of other jurisdictions have adopted some or all of these [privacy] torts, in this State the right to privacy is governed exclusively by Sections 50 and 51 of the Civil Rights Law; we have no common law of privacy.") (citations omitted).  Given that New York's statutory cause of action is notoriously restrictive, *see, e.g.*, *Messenger ex. rel.*, 94 N.Y.2d  at 441, 706 N.Y.S.2d at 54  ("[W]e have underscored that [New York's Civil Rights] statute is to be narrowly construed."), cases arising under the New York statute are not informative for the this Court's decision.

Hasbro also cites to the *Maggio* case for the proposition that "[p]ersons whose names are similar to those used in fiction are, perhaps, unduly sensitive about anything that is written concerning the portrayed character and are quick to attribute such references to themselves."  *People on Complaint of Maggio v. Charles Scribner's Sons*, 205 Misc. 818, 824, 130 N.Y.S.2d 514, 520 (N.Y. Magis. Ct. 1954) ("Maggio").  (*See* Mot. 8.)  However, Hasbro conveniently omits the preceding sentence, which states:  "The name 'Maggio' is a fairly common name." *Maggio*, 205 Misc. at 824, 130 N.Y.S.2d at 520.  Moreover, in *Maggio* (which, like *Allen*, arose under New York's more restrictive Civil Rights Law, not the common law), the defendant did not even use the plaintiff's actual name.  *See id*. ("The

complainant's name is not Angelo Maggio.  It is Joseph Anthony Maggio.").  As such, *Maggio* has no bearing whatsoever on the present dispute.

In sum, New Jersey law is clear that the unauthorized use of another person's name, in and of itself, gives rise to a cause of action for right of publicity if the plaintiff is a recognizable public person.  Hasbro's argument to the contrary has no support under the law, and is contrary to New Jersey's historical protection to well-known names.  It should be rejected in full.

## C. There Is No Such Thing as a "Minus Factor" Under New Jersey Law

Hasbro's attempt to impose so-called "minus" factors on Faulkner's claim must also fail because it is likewise inappropriate and unsupported.  (*See* Mot. 13.) Simply put, there is no such thing as a "minus factor" under New Jersey's common law of publicity.  Hasbro invented the concept out of whole cloth.

But even if such a concept did exist, Hasbro's contention that "[n]o one could possibly identify the fictional Hamster Toy with Ms. Faulkner based on their appearance" because "Ms. Faulkner is an adult, African-American, human, female newscaster" and "the Hamster Toy is an inch-tall, cartoon-like plastic animal, which has no apparent gender or profession, or even clothing that might identify its gender or profession" should be rejected.  (*Id.* at 2.)  To begin, Hasbro's argument

33

blinks the reality of the anthropomorphic genre.[9]  For example, Daffy Duck is commonly reported to be inspired by film actor Hugh Herbert, even though the black Warner Brothers mallard and the white character actor seemingly have nothing in common.[10]  Moreover, by Hasbro's logic, no adult human with an identifiable gender could ever bring a claim based on the use of her name or identity in an animal toy.  But that is not what the law says.  An anthropomorphized version of a plaintiff can give rise to a common law claim for right of publicity, even though by definition the use of the plaintiff's persona would not qualify as a use of his or her likeness.  *See, e.g., White v. Samsung Elecs.*, 971 F.2d 1395, 1399 (9th Cir. 1992) (robot version of Vanna White used in a commercial violated the common law right of publicity, even though her name was not mentioned and her likeness was not used) (cited with approval in

---

[9] Hasbro's argument that an anthropomorphized animal figurine cannot appropriate a human being's likeness is contrary to its own business practices.  In discovery, Faulkner intends to pursue evidence that Hasbro sought and obtained permission to use the image of Stacey Dash (who appeared as the character Dionne in the well-known film *Clueless*) as the inspiration for a My Little Pony toy.  *See* Nov. 15 Twitter Post by Stacey Dash, *available at* https://twitter.com/REALStaceyDash/status/666048032060796928.  Incidentally, Dash is also a Fox News contributor who has appeared with Faulkner on *Outnumbered* several times.  *See* Blue Telusma, "Stacey Dash discusses Ebony Magazine's criticism and 'Democratic party's new version of slavery' on Fox News," http://thegrio.com/2014/12/20/stacey-dash-discusses-ebony-magazines-criticism-and-democratic-partys-new-version-of-slavery-on-fox-news/ (accessed Dec. 2, 2015).

[10] *See* "Hugh Herbert," http://www.walkoffame.com/hugh-herbert (accessed Dec. 2, 2015).

*McFarland*, 14 F.3d at 919-20).  Accordingly, even if the Harris Faulkner Hamster Doll, due to the fact that it is an anthropomorphized toy, by necessity may not be an exact copy of Faulkner's professional appearance, the physical similarities between the doll and Faulkner can and do reinforce her claim—which is also based on the use of her recognizable name and persona—that Hasbro has appropriated the value of her name and persona.

Hasbro's attempts to contest Faulkner's allegations regarding these physical similarities are invalid and are certainly not questions that can be resolved as a matter of law on a motion to dismiss.  For example, Hasbro claims that the shape and design of the Harris Faulkner Hamster Doll's eye makeup is entirely dissimilar from Faulkner's traditional professional appearance, that the doll is allegedly genderless, and that "the entire Littlest Pet Shop series depicted in the packaging, has the same large eyes and long eyelashes as the Hamster Toy." (Mot. 13.)  But a reasonable person could easily conclude that the eye makeup design is similar— they both employ lush, long lashes and dark eyeliner that creates the effect of an upturned outer lid.  A reasonable person could likewise conclude that Hasbro referred to Faulkner's persona when it named a doll with traditionally female physical traits—such as its eye makeup, pink hair bow, butterfly accessory, and long brown hair—with a traditionally male name.  Further, the package insert itself shows that Hasbro's claim about dolls' eyes all being the same and all having the

same long eyelashes as the Harris Faulkner Hamster Doll is just plain false.  Some of the Littlest Pet Shop characters (like Harris Faulkner) have long eyelashes and makeup, which makes them, at a minimum, readily perceivable as female.  (*See* Wogan Decl. Ex. B at 5 (depicting long eyelashes and makeup on dolls named Sugar Sprinkles, Lola Hopalong, Madame Pom Leblanc, and others).)  By contrast, other characters with traditionally male names, like Vinnie Terrio, Sunil Nevla, and Philippe Boudreaux, do not have long eyelashes or makeup.  (*See id.*)  Hasbro also argues that Faulkner cannot look like the Harris Faulkner Hamster Doll because it is purportedly "golden yellow" (Mot. 12)—but in person, the doll is tan in color.  (Wogan Decl., Ex. B.)  And Hasbro does not account at all for other similarities—such as the shape and proportions of Faulkner and the doll's faces, which are also very similar, particularly in profile.

Hasbro's attempt to have the Court make value judgments on the similarities of the doll's eye makeup, its apparent gender, and the color of Faulkner's skin are improper.   In support of this point, Hasbro attaches various photographs of Faulkner taken from the Internet.  (Wogan Decl., Ex. C.)  None display her in profile; thus, they are not proper points of comparison to the three-dimensional toy.  Because Faulkner disputes that these images are appropriate points of comparison, Hasbro's argument that copyright cases (where the works in question are not disputed) allow the Court to make a comparison between the doll and Faulkner at

this stage, should be rejected. Indeed, Hasbro cites absolutely no authority stating that such a comparison is appropriate for this element of a right of publicity claim—and it is not. Hasbro's own treatise states that such comparisons are issues of fact for a jury. McCarthy § 3:18 (it is "clear that 'identifiability' is a question of fact."). Thus, the comparison that Hasbro is asking the Court to make is a question for a jury—not the Court—to decide. *See, e.g., Abdul-Jabbar*, 85 F.3d at 416 ("Whether or not Lew Alcindor 'equals' Kareem Abdul–Jabbar . . . is a question for the jury.").

Hasbro's argument that the "imaginary world of Littlest Pet Shop" has nothing to do with Faulkner's "world of Fox News" is equally improper. (Mot. 13.) There is no evidence whatsoever at this stage in the proceedings on what either of those purported "worlds" entails, as the Complaint contains no such allegations. Hasbro's attempt to put before the Court extrinsic evidence—*e.g.*, a packaging insert that allegedly "depicts the 2014 Littlest Pet Shop series, as well as the fictionalized world in which the pets live" (Mot. 2; Wogan Decl. Ex. B), and the names of other Littlest Pet Shop dolls like "Farah May, Dawn Ferris, Zoe Trent, Zizi Morales, Lily Laroux, [and] Delilah Barnsley" (Mot. 3)—is inappropriate. These exhibits are neither "integral to [Faulkner's] claim" (*Id.* at 2), nor subject to judicial notice. *See LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC.*, 287 F.3d 279, 290 (3d Cir. 2002) (a judicially noticed fact is one that is "not

37

subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (internal citations omitted).  Thus, this argument is not appropriate to raise at this stage, and with good reason.  Hasbro's representations concerning the context of the Harris Faulkner Hamster Doll (which fail to disclose that Littlest Pet Shop toys, including the Harris Faulkner Hamster Doll, have been featured in marketing videos with a newsroom play set) are demonstrably misleading and disingenuous, even without the access to Hasbro's records concerning the purported world of the Littlest Pet Shop that would be provided in discovery.  *See supra,* 13; *infra,* 39.  Hasbro's unreliable claims about this purported world should not be credited, and its arguments based on those false claims should be rejected.

The cases on which Hasbro relies in this section are also inapposite.  (Mot. 13-14) (citing *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1061 (N.D. Ill. 1982)) (regarding a non-celebrity, though allegedly acclaimed, professional wood carver who acknowledged that the defendant's use of his name might have been coincidence); *Bates v. Cast*, 316 P.3d 246, 252 (Okla. Civ. App. 2014) (regarding a private individual); *Swacker v. Wright*, 154 Misc. 822, 823, 277 N.Y.S. 296, 298 (Sup. Ct. Nassau Cnty. 1935) (regarding a non-celebrity attorney).)  None of these cases were decided on the basis of "minus factors";

rather, they deal with the same question set forth in *Botts*, *Allen*, and *Maggio*—was the value of plaintiff's name appropriated by the defendants' use?  Thus, Hasbro's argument about "context" is really a rehash of its argument that "name-sameness" is not sufficient—and for this reason, all of these cases are distinguishable for the same reasons that *Botts*, *Allen*, and *Maggio* do not govern here.  Again, all of these cases involve literary or television characters who by happenstance shared a name with individuals who were not celebrities with valuable names.  By contrast here, Harris Faulkner is not merely a random name with no standalone value.  Rather, "Harris Faulkner" is a well-known celebrity name that Hasbro used on a commercial product to attract consumers' attention, for its own commercial benefit.  Furthermore, the use of the Harris Faulkner Hamster Doll in the LPS Newsroom Videos is additional evidence demonstrating that, in context, Hasbro was in fact using Faulkner's name to trade off of her persona.

In sum, far from weighing against Faulkner, the so-called "minus factors" of the doll's appearance and its context in fact reinforce the validity of her claim.

## CONCLUSION

Hasbro does not and cannot contest Faulkner's allegations that Faulkner is well known, that she has a valuable name and persona, and that Hasbro traded off of the commercial value of that persona, for its own profit, by using her full name as a purported trademark on a commercial good, causing actual consumer

confusion, all without Faulkner's consent—and to the detriment of her reputation for professional integrity and her ability to control the valuable brand that she has worked for over twenty years to cultivate.  Hasbro's actions are the very definition of a commercial appropriation in clear violation of New Jersey's common law right of publicity.  Rather than admit its error, or even proceed with defending the case, Hasbro instead has elected to delay this action and consume party and Court resources on a Motion that misreads the law, makes false representations about the facts, and never should have been filed.  The Motion should be denied.


Dated:  Parsippany, NJ                    By:___/s/  Paul J. Halasz __
        December 7, 2015              DAY PITNEY LLP
                                       Paul J. Halasz
                                       One Jefferson Road
                                       Parsippany, NJ 07054-2891
                                       Tel.: (973) 966-6300
                                       Fac.: (973) 966-1015
                                       Email: phalasz@daypitney.com

                                     HOGAN LOVELLS US LLP
                                     Dori Hanswirth, Esq.*
                                     Theresa House, Esq.*
                                     Patsy Wilson, Esq.*
                                     875 Third Ave.
                                     New York, NY 10022
                                     Tel.: (212) 918-3000
                                     Fac.: (212) 918-3100
                                     Email: dori.hanswirth@hoganlovells.com
                                     *admitted *pro hac vice*

                                     *Attorneys for Plaintiff Harris Faulkner*